In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-1754

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RASHOD BETHANY,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:06-cr-00346-1 — **Harry D. Leinenweber**, *Judge.*

ARGUED JUNE 1, 2020 — DECIDED SEPTEMBER 15, 2020

Before RIPPLE, WOOD, and SCUDDER, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Rashod Bethany participated in a conspiracy to distribute crack cocaine in Chicago. He was sentenced originally in 2013, but that sentence was vacated, and he was resentenced in 2019 after the enactment of the First Step Act of 2018. He now appeals from that sentence. He submits that, in imposing the 2019 sentence, the district court should have applied to him two sections of the First Step Act, as well as three retroactive amendments to the Sen-

tencing Guidelines. We hold that Mr. Bethany is entitled to the benefit of § 401 of the First Step Act, but the record leaves us in doubt as to whether he would have received the same sentence if he had the benefit of that provision. Accordingly, we order a limited remand to the district court to ascertain whether the district court is inclined to impose a different sentence in light of our decision today. *See United States v. Paladino,* 401 F.3d 471, 484 (7th Cir. 2005).

# I

## BACKGROUND

### A.

In 2008, Mr. Bethany was charged by a second superseding indictment with one count of conspiracy to distribute and to possess with intent to distribute 50 grams or more of a substance containing cocaine base in the form of crack cocaine, in violation of 21 U.S.C. §§ 841 and 846, and three counts of distributing 50 grams or more of cocaine base in the form of crack cocaine, in violation of 21 U.S.C. § 841(a)(1).

In 2009, Mr. Bethany pleaded guilty to the conspiracy count. At the time, a conviction involving 50 grams or more of crack cocaine triggered a ten-year mandatory minimum and a maximum of life imprisonment. Prior to the plea, the Government filed an information under 21 U.S.C. § 851, notifying the court of two prior convictions for felony drug offenses. It agreed to rely on only one of the prior convictions, which elevated the statutory range to twenty years' to life imprisonment. At the plea colloquy, Mr. Bethany admitted guilt but did not admit the amount of cocaine or the fact that it was crack cocaine. Subsequently, Mr. Bethany moved to

withdraw his guilty plea, but the district court denied his motion.

After Mr. Bethany's plea but before sentencing, Congress enacted the Fair Sentencing Act of 2010, Pub. L. 111-220, 124 Stat. 2372. Among other things, the Fair Sentencing Act reduced statutory penalties for crack cocaine offenses. When Mr. Bethany pleaded guilty, an offense involving 50 grams or more of cocaine triggered a twenty-year mandatory minimum. The Fair Sentencing Act raised that bar to 280 grams.

**1.**

In early 2011, the Probation Office prepared a presentence investigation report ("PSR"), using the 2010 version of the United States Sentencing Guidelines, which would be in effect at the time of Mr. Bethany's sentencing, scheduled for June 2011.[1] It employed a base offense level of 36 because,

---

[1] The calculations in the PSR were as follows:

| PSR Guidelines Calculations | | |
|---|---|---|
| | Rationale | Level |
| Base Offense | Over 7 kg of crack cocaine | 36 |
| Enhancements | Use of violence | +2 |
| | Criminal conduct engaged in as a livelihood | +2 |
| | Organizer/leader in a criminal activity | +4 |
| | Obstruction of justice | +2 |
| Reduction | Acceptance of responsibility | -2 |
| Total | | 43 |

(continued … )

according to the PSR, Mr. Bethany's offense had involved over 7 kilograms of cocaine base. The Government maintained that Mr. Bethany had trafficked more than 8.4 kilograms of cocaine and thus should have a base offense level of 38. Mr. Bethany maintained that he could be found responsible for only 160 grams of cocaine, the amount involved in the controlled drug transactions for which he was apprehended. In his view, because he had been charged only with an offense involving "50 grams or more" of cocaine, the court could not sentence him based on a higher quantity. Mr. Bethany based his argument on the issue then before the Supreme Court in *United States v. Alleyne*, 457 F. App'x 348 (4th Cir. 2011), *cert. granted*, 568 U.S. 936 (2012). After Mr. Bethany's sentencing, the Supreme Court held that any fact that increases the mandatory minimum sentence must be submitted to a jury. *Alleyne v. United States*, 570 U.S. 99, 103 (2013).

**2.**

In March 2013, after a three-day sentencing hearing, the court found that Mr. Bethany played a leadership role in a drug dealing operation, including controlling two "stash houses."[2] Based on the evidence presented, it determined

---

( … continued)

R.324 at 11–13. The mathematical calculations add up to 44 levels; however, because 43 is the maximum total offense level, the PSR concluded that the total offense level was 43.

[2] Section 2D1.1(b)(12) of the United States Sentencing Guidelines enhances a defendant's base offense level by two levels "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing

(continued … )

that the offense involved at least 280 grams of cocaine. The court then calculated the guidelines range, using the 2012 Guidelines then in effect. It began with a base offense level of 32, corresponding to the 280-gram amount, and added 4 levels for Mr. Bethany's role as the leader of a criminal activity. It further added 2 levels each for use of violence, engaging in criminal conduct as a livelihood, obstruction of justice, and maintaining the "stash houses." After a 2-level reduction for acceptance of responsibility, the total offense level was 42, which, paired with a criminal history category of IV, resulted in a guidelines range of 360 months' to life imprisonment. The district court ultimately imposed a below-guidelines sentence of 300 months' imprisonment, noting that the "stash house" enhancement was not in the Guidelines at the time Mr. Bethany committed the offense and that there was a sentencing disparity between powder and crack cocaine.

**3.**

Mr. Bethany appealed his conviction and sentence to this court. *United States v. Bethany*, 569 F. App'x 447 (7th Cir. 2014) ("*Bethany I*"). He contended that the district court had committed three errors: it (1) denied his motion to withdraw his guilty plea; (2) made a factual finding that resulted in an increased mandatory minimum, in violation of *Alleyne*; and (3) applied certain sentencing enhancements in violation of the Ex Post Facto Clause. We concluded that the district court's failure to discuss the Guidelines at sentencing was

( … continued)

a controlled substance." The "stash house" enhancement became effective on November 1, 2010.

harmless, and therefore the district court did not abuse its discretion in denying his motion to withdraw his guilty plea. We held that there was no *Alleyne* error: although the court determined that Mr. Bethany faced a statutory minimum of twenty years in prison, his sentence of twenty-five years was a downward departure from the guidelines range. Thus, "the statutory minimum had absolutely no effect on his ultimate sentence." *Id.* at 452.

Finally, we concluded that it was not reversible error for the district court to apply enhancements for maintaining a "stash house" and for use of violence, even though those provisions did not exist when Mr. Bethany committed the crime. We observed that the application of Guidelines that came into effect after an offense was committed violates the Ex Post Facto Clause if it increases the defendant's guidelines range. *See Peugh v. United States*, 569 U.S. 530, 544 (2013). We concluded, however, that our precedent foreclosed Mr. Bethany from arguing "that he is entitled to pick and choose between portions of the 2005 Sentencing Guidelines and the 2012 Sentencing Guidelines." *Bethany I*, 569 F. App'x at 452. Reasoning that the district court "must apply either the *entire* 2005 manual or the *entire* 2012 manual," we noted that Mr. Bethany had not contended that he should have been sentenced using the 2005 Guidelines.[3] *Id.* Accordingly, we rejected Mr. Bethany's argument.

---

[3] The Sentencing Guidelines use a "one-book rule." United States Sentencing Guidelines § 1B1.11. "The Guidelines Manual in effect on a particular date shall be applied in its entirety." § 1B1.11(b)(2). Mr. Bethany's counsel erroneously advocated a "split-book" approach, attempting to obtain the benefit of the most favorable portions of each version of the

(continued … )

**B.**

In 2016, Mr. Bethany filed a petition under 28 U.S.C. § 2255, attacking his sentence on multiple grounds. First, he reiterated that the district court committed an *Alleyne* error when it found that his offense involved 280 grams of cocaine. Second, he contended that he received ineffective assistance of counsel when his defense counsel failed to object to portions of the PSR and presented poorly an argument regarding three enhancements that, in Mr. Bethany's view, violated the Ex Post Facto Clause.[4] Third, Mr. Bethany asserted that he received ineffective assistance when his defense counsel argued in favor of a "split-book" sentencing approach.

The district court rejected the first two arguments but agreed that counsel's failure to argue in favor of a "one-book rule" constituted ineffective assistance of counsel. Not only

---

( … continued)

Guidelines. As we explained, "that is not the law of this Circuit." *United States v. Bethany*, 569 F. App'x 447, 452 (7th Cir. 2014) ("*Bethany I*").

[4] Mr. Bethany's sentence had incorporated three enhancements that were contained in the 2012 Guidelines but not the 2005 Guidelines: the use of violence, criminal livelihood, and "stash house" enhancements. Mr. Bethany's counsel challenged the legitimacy of the "stash house" enhancement at sentencing, and amended his argument on appeal to include the use of violence enhancement, but never mentioned the criminal livelihood enhancement.

Applying *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the district court reviewing the 28 U.S.C. § 2255 motion acknowledged that counsel's performance was deficient, but concluded that Mr. Bethany had not suffered any prejudice as a result.

was counsel's argument "verboten," but the error also prejudiced Mr. Bethany.[5] The district court concluded that "a 2005-only application would have been to Bethany's benefit" because the range was lower under that version of the Guidelines and because, "had Bethany's appellate counsel … argued that Bethany would have faced a lower sentencing guideline range via a single-book application of the 2005 manual, there is a reasonable probability the Seventh Circuit would have reversed this Court's pre-*Peugh* sentence and remanded."[6] Accordingly, the district court granted Mr. Bethany's petition for resentencing under the 2005 Guidelines.[7]

Both parties filed position statements addressing the appropriate guidelines range upon resentencing. The Government's proposed calculations began with a base offense level of 34, based on an amount of 280 grams of cocaine. It proposed enhancements for a leadership role in a criminal activity and obstruction of justice and a reduction for acceptance of responsibility. The total offense level of 38 and criminal history category of IV resulted in a range of 324 to 405 months. The Government asked the court to reimpose the sentence of 300 months' imprisonment.

---

[5] R.17 (1:16-cv-03095) at 10–14.

[6] *Id.* at 13.

[7] In this appeal, the Government does not contend that the district court engaged in a limited resentencing. We therefore consider the matter waived. In any event, after careful examination of the record, we are confident that the district court did order a plenary resentencing.

On December 21, 2018, Congress enacted the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194. Relevant here, the First Step Act reduced and restricted mandatory minimum sentences for certain defendants for whom "a sentence … has not been imposed as of such date of enactment." § 401(c). It also made retroactive certain provisions of the Fair Sentencing Act. *Id.* §§ 401, 404. Both parties filed submissions addressing the First Step Act's impact on the proceedings. The Government submitted that the First Step Act did not apply to Mr. Bethany because a sentence had been imposed upon him long before the Act was enacted and because he had already received the benefit of the Fair Sentencing Act.

Mr. Bethany disagreed. In his view, the First Step Act applied to him because it was enacted before his resentencing and, at the time of its enactment, he had been a convicted, but unsentenced, defendant. He contended that an alleged *Alleyne* error by the district court at his original sentencing had prevented him from benefiting from the Fair Sentencing Act. He also submitted that in addition to a resentencing under the 2005 Guidelines, he should receive the benefit of three retroactive amendments to the Guidelines. Under one of these amendments, Amendment 750, offenses involving 280 grams or more of crack cocaine are assigned a base offense level of 32; Mr. Bethany maintained that this should be the starting point for calculating his sentence. He proposed the same adjustments to the base offense level as the Government with some exceptions: First, he requested a three-level reduction for acceptance of responsibility rather than the two-level reduction proposed by the Government. Second, his calculation included two two-level reductions for Amendments 706 and 782, which adjusted offense levels

for certain drug quantities. Mr. Bethany's calculations resulted in a total offense level of 31, which, combined with a criminal history category of IV, produced a guidelines range of 151 to 188 months. Further, he contended that the mandatory minimum should be ten years rather than twenty because, under the First Step Act, his prior convictions no longer qualified as predicate offenses that would trigger an enhanced sentence.

At resentencing, the district court calculated a total offense level of 37. It appears that the court tracked the Government's proposed calculations, except that it gave Mr. Bethany the three-level reduction for acceptance of responsibility, rather than the two-level reduction requested by the Government.[8] During the hearing, the court heard arguments from both parties regarding the applicability of the First Step Act. It then stated:

> [C]urrent law provides that … those who were sentenced prior to the Fair Sentencing Act can obtain benefits of the Fair Sentencing Act. That's, as I understand, what the First Step Act is … if they were sentenced prior to [the Fair Sentencing Act], so they could not benefit by the Fair Sentencing Act because it hadn't been enacted, then under the … First Step Act, the Court can go back and give him the benefit of the Fair Sentencing Act. But if he had the benefit of the Fair Sentencing Act even if he didn't receive a—it didn't apply to his sentence but

---

[8] R.357 (1:06-cr-00346) at 11–12.

> he had the benefit because he could have urged
> the Court, that's my understanding of the gov-
> ernment's position, and that's kind of my un-
> derstanding of the way that the [A]ct operates.
> He was sentenced after the Fair Sentencing Act
> so that he did get the benefit.[9]

When Mr. Bethany had the opportunity to speak, he reit-
erated his contention that under § 401 of the First Step Act,
his prior convictions no longer qualified as predicate offens-
es. The court, however, did not respond to this statement.
Ultimately, the district court calculated a guidelines range of
292 to 365 months' imprisonment. After making an adjust-
ment based on Mr. Bethany's post-incarceration conduct, the
court imposed a sentence of 250 months' imprisonment.

Mr. Bethany then filed a timely appeal to this court.

## II

## DISCUSSION

This case presents three distinct questions: First, we ex-
amine whether § 401 of the First Step Act applies to
Mr. Bethany. Second, we consider whether § 404 applies to
him. Finally, we must decide whether the district court erred
in declining to give Mr. Bethany the benefit of certain retro-
active amendments to the Sentencing Guidelines.

### A.

Section 401 of the First Step Act narrowed the range of
offenses that qualify as predicate offenses triggering en-

---

[9] *Id.* at 15–16.

hanced mandatory minimum sentences. If § 401 applies to Mr. Bethany, his prior drug convictions no longer constitute predicate offenses.

By its terms, § 401 applies "to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." § 401(c). Whether Mr. Bethany is entitled to the benefit of § 401 hinges on whether a sentence for his offense was imposed as of the date the First Step Act was enacted, while he awaited resentencing.

The answer to this question is dictated largely by our recent *en banc* opinion in *United States v. Uriarte*, No. 19-2092. Uriarte originally was sentenced for violations of 18 U.S.C. § 924(c) in 2013; at the time, a second violation of § 924(c) triggered a 25-year minimum sentence, even if the second violation was part of the same indictment as the first. The sentencing court acknowledged these mandates and imposed a 50-year sentence. On appeal, we vacated Uriarte's sentence. Prior to resentencing, Congress enacted the First Step Act, which provides that contemporaneous § 924(c) convictions no longer trigger a 25-year mandatory minimum sentence. First Step Act of 2018, § 403(a), Pub. L. No. 115-391, 132 Stat. 5194, 5221–5222 (Dec. 21, 2018). Moreover, as with § 401(c), the amendment is applicable "to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." The district court gave Uriarte the benefit of the amendments, and we affirmed. We observed that, when we vacated the original sentence, we "render[ed] it a nullity." *Uriarte*, slip op. at 7. At the time the First Step Act was enacted, therefore, Uriarte "was a convicted, but unsen-

tenced, federal defendant." *Id.* "Nothing in the text of the statute," we explained,

> suggests that Congress intended to create an exception to the ordinary effect of the vacatur of a sentence. Indeed, it is clear that the statute reflects a congressional intention that its policy decision apply to both pre-Act offenders who have never been sentenced and to pre-Act offenders whose sentences had been vacated before the date of the enactment, but who had not been resentenced as of that date.

*Id*. at 9–10.

We reach the same conclusion with respect to Mr. Bethany. Mr. Bethany was initially sentenced before the First Step Act was enacted, but he later filed a motion under 28 U.S.C. § 2255, asking the court to vacate his sentence and resentence him.[10] The district court granted his § 2255 motion, rendering his initial sentence null and void.[11] "[T]he effect of the order to vacate was to nullify [Mr. Bethany's] sen-

---

[10] R.1 (1:16-cv-03095) at 7.

[11] The district court concluded that at the time of the original sentencing, our case law bound it to apply the Guidelines in effect at the time Mr. Bethany was sentenced—the 2012 manual. *See* R.17 (1:16-cv-03095) at 14. It granted Mr. Bethany's § 2255 motion for resentencing in order to resentence Mr. Bethany under the 2005 version of the Guidelines. The court declared that it would "entertain [18 U.S.C.] § 3553 arguments from both parties" and make fresh guidelines calculations. *Id.* Thus, when the court granted the § 2255 motion, it rendered invalid Mr. Bethany's original sentence.

tence." *United States v. Barnes*, 948 F.2d 325, 330 (7th Cir. 1991). When the First Step Act was enacted, Mr. Bethany was awaiting resentencing. He was resentenced in 2019, after the Act became law. By the plain language of the statute, § 401 applies to him, just as § 403 applied to Uriarte.

In short, Mr. Bethany, who did not have a valid sentence and who was awaiting sentencing at the time the First Step Act was enacted, is entitled to benefit from § 401. Accordingly, the district court erred in failing to apply § 401.

We have considered the possibility that any error in the failure to apply § 401 was harmless error because the district court made it clear during the resentencing proceeding that it did not rely on the mandatory minimum in resentencing Mr. Bethany. Our examination of the record reveals a significant possibility that Mr. Bethany would have received the same sentence regardless of whether § 401 applied. At the same time, the district court did refer to the twenty-year mandatory minimum and, in a colloquy with the defendant during resentencing, said, "It seems to me that based upon the legal issues in front of me now that you're stuck with the … 20-year mandatory minimum."[12]

Because some ambiguity exists in the resentencing transcript and because of the very significant difference in the mandatory minimum now applicable under the First Step Act, we believe that the proper course, while retaining appellate jurisdiction, is to inquire of the district court whether, in light of our ruling today, it is inclined to resentence

---

[12] R.357 (1:06-cr-00346) at 24–25.

Mr. Bethany. If the court informs us that it is so inclined, we will vacate the sentence and remand the case for resentencing. If the district court tells us that it is not inclined to resentence Mr. Bethany, we will address whether the present sentence is reasonable and then enter a final judgment. *See Paladino*, 401 F.3d at 484.

**B.**

We next address whether § 404 of the First Step Act should have applied to Mr. Bethany at resentencing. Section 404 makes retroactive certain provisions of the Fair Sentencing Act. As relevant here, it makes retroactive the provisions that raised the threshold amounts of controlled substances required to trigger enhanced penalties.

Before the enactment of the Fair Sentencing Act, a quantity of 50 grams of crack cocaine made a defendant eligible for higher penalties. The enactment of the Fair Sentencing Act elevated the threshold to 280 grams. The Fair Sentencing Act, however, did not apply to those sentenced before its enactment; the First Step Act remedied this situation by extending the Fair Sentencing Act's application to those whose offenses were committed before August 3, 2010. Section 404 provides that a defendant who committed a "covered offense" is eligible for relief. A "covered offense" is defined as an offense (1) committed before the enactment of the Fair Sentencing Act on August 3, 2010, and (2) involving a quantity of drugs that no longer triggers enhanced penalties. § 404(a). A defendant who committed such an offense is entitled to "a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act … were in effect at the time the covered offense was committed." § 404(b) (citations omitted).

We therefore must inquire whether Mr. Bethany's conviction is a "covered offense" within the meaning of § 404. The answer to the first part of this inquiry is clear. The offense, conspiracy to distribute and to possess with intent to distribute cocaine, was committed before August 3, 2010, the enactment date of the Fair Sentencing Act. The second part of the question, whether Mr. Bethany's offense involved a quantity of drugs that no longer triggers enhanced penalties, is somewhat complicated. Our case law provides a helpful path. We already have said that "whether an offense is covered simply depends on the statute under which a defendant was convicted." *United States v. Shaw*, 957 F.3d 734, 739 (7th Cir. 2020). We therefore look to the statute of conviction alone to determine Mr. Bethany's eligibility for relief under § 404. *Id.* Mr. Bethany pleaded guilty to count one of the second superseding indictment, which charged Mr. Bethany and others with conspiring "to knowingly and intentionally possess with intent to distribute and to distribute a controlled substance, namely, 50 grams or more of … crack cocaine …" in violation of 21 U.S.C. § 841(a)(1).[13]

When Mr. Bethany pleaded guilty, 50 grams of cocaine was sufficient to trigger enhanced penalties, but by the time he was sentenced, the Fair Sentencing Act had raised the threshold to 280 grams. After an extensive hearing at Mr. Bethany's original sentencing, the court made a finding that the offense involved 280 grams. But the district court's factual finding at sentencing does not affect the statute of conviction; regardless of what the court determined in later

---

[13] R.87 at 1.

proceedings, Mr. Bethany was *convicted* of an offense involving 50 grams or more of cocaine. "The relevant provision of the Fair Sentencing Act of 2010, section 2, did not modify the penalties on an individual basis. Instead, it broadly modified penalties for entire categories of offenses that include fixed aggravating elements, such as the weight of the drug." *Id.* at 739. Accordingly, Mr. Bethany committed a "covered offense" within the meaning of § 404 of the First Step Act.

But that is not the end of the matter. Section 404(b) authorizes a court to impose a reduced sentence "as if sections 2 and 3 of the Fair Sentencing Act … were in effect at the time the covered offense was committed," but Mr. Bethany *has* already been sentenced as if the Fair Sentencing Act were in effect at the time of his offense. The Fair Sentencing Act was already in effect at the time he was sentenced in 2013 and at the time he was resentenced in 2019. Thus, it was not the First Step Act that rendered Mr. Bethany eligible to receive the benefit of the Fair Sentencing Act; the Fair Sentencing Act applied to him by its own terms.

What Mr. Bethany appears to be contesting here is the *Alleyne* violation that he believes occurred at the initial sentencing. He raised this question before in his first appeal when he contended that, absent the district court's finding at his initial sentencing, he would have been eligible for a lower mandatory minimum. We disagreed, explaining that because the district court had determined a mandatory minimum of twenty years and sentenced him to twenty-five years (a downward departure from the guidelines range), "the statutory minimum had absolutely no effect on his ultimate sentence." *Bethany I*, 569 F. App'x at 452. In the present appeal, Mr. Bethany cannot overcome the hurdle pre-

sented by our previous decision. The ruling in *Bethany I* conclusively decided the question, and "the courts … forbid a prisoner to relitigate in a collateral proceeding an issue that was decided on his direct appeal." *White v. United States*, 371 F.3d 900, 902 (7th Cir. 2004). Mr. Bethany's argument here—that the district court that initially sentenced him violated the rule of *Alleyne*—is no different than the argument he made before us in *Bethany I*. The issue is foreclosed.

## C.

Finally, we examine whether the district court erred in declining to apply certain retroactive amendments to the Guidelines when calculating Mr. Bethany's sentence.

Recall that the use of the 2005 version of the Guidelines (rather than the 2012 version) was the purpose of Mr. Bethany's resentencing. He does not, of course, contest the use of the 2005 Guidelines; instead, he contends that the district court should have applied three retroactive amendments promulgated in the intervening years.[14] Amendments 706,

---

[14] The Government asks us to construe Mr. Bethany's argument as an attempt to benefit from a "split-book" approach to sentencing. In its view, Mr. Bethany "was not entitled to benefit from subsequent amendments that favored him, while avoiding application of subsequent amendments that did not." Government's Br. 35.

If that were the case, the answer would be clear: a sentencing court must apply a "one-book" approach, using one version of the Guidelines in its entirety. *Bethany I*, 569 F. App'x at 452. But Mr. Bethany is not asking us to require a split-book approach. We understand his argument to be that the district court should have granted him the reductions for which he may have been eligible under 18 U.S.C. § 3582(c)(2). Under that

(continued … )

750, and 782 reduced the offense levels for certain crack cocaine offenses.[15] Each applies retroactively.[16] In an ordinary situation, a defendant sentenced under the 2005 Guidelines may receive a sentence reduction under certain conditions:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. [§] 994(*o*), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2). At resentencing, Mr. Bethany effectively asked the district court to grant him the sentence re-

---

( … continued)

section, courts may reduce the sentences of defendants convicted of offenses for which the guidelines sentence was subsequently lowered.

[15] By Mr. Bethany's calculations, the application of these amendments would result in a guidelines range of 151 to 188 months, significantly less than the range calculated by the resentencing court and significantly less than the sentence he received.

[16] Amendments 706, 750, and 782 were given retroactive application by Amendments 713, 759, and 788, respectively.

ductions directly, rather than requiring him to go through the extra step of filing a motion under § 3582(c)(2).

The statute itself provides that a court may on its own motion reduce the term of imprisonment. *Id.* In some cases, it may be preferable to do so for reasons of judicial economy. The question before us, however, is not whether the district court *could have* done so, but instead whether it was required to do so.

The text of § 3582(c)(2) is clear: a court "*may* reduce the term of imprisonment" (emphasis added). *See United States v. Purnell*, 701 F.3d 1186, 1190 (7th Cir. 2012) (explaining that "[i]n any individual case, … such a reduction is discretionary"). In evaluating a § 3582(c)(2) motion, a court considers the § 3553(a) factors and whether the result is consistent with the policy of the Sentencing Commission. The court was not required to reduce Mr. Bethany's sentence even if he had filed a motion under § 3582(c)(2). Mr. Bethany points to nothing in the language of the statute or the case law *mandating* a court to consider a sentence reduction on its own motion. Accordingly, although the district court could have exercised its discretion to apply the retroactive amendments to the Guidelines, it was not required to do so.

## Conclusion

We hold that Mr. Bethany is entitled at this point to the benefit of § 401 of the First Step Act. The record raises a substantial question, however, as to whether the district court would have imposed a different sentence if it had known that § 401 is applicable. Accordingly, while retaining appellate jurisdiction, we order a limited remand to the district court to ascertain whether the court is inclined to impose

another sentence in light of our holding today. Following the procedure set forth in *Paladino*, 401 F.3d at 484, the district court will consider the views of counsel, at least in writing, and then reply to this court's inquiry.

If the district court informs us that it is not inclined to re-sentence Mr. Bethany, we will consider whether the adjudicated sentence is reasonable and then enter judgment accordingly. The district court will remain free to consider any motion under 18 U.S.C. § 3582(c) that Mr. Bethany may file. If the district court indicates that it is inclined to resentence Mr. Bethany, we will remand the case to that court for resentencing. If Mr. Bethany files any motion under 18 U.S.C. § 3582(c), the district court may entertain such a motion at the same time as the resentencing, or it may decide, in its discretion, to adjudicate the motion as a separate matter.

IT IS SO ORDERED

SCUDDER, *Circuit Judge*, concurring. This appeal, much like *United States v. Uriarte*, No. 19-2092, presents a difficult question of statutory interpretation regarding the application of § 401 of the First Step Act to Rashod Bethany's resentencing. For the reasons Judge Barrett articulated in her *Uriarte* dissent, I believe the government had the better end of the argument. And I thought that was especially so where, as in Bethany's case, resentencing followed his receipt of post-conviction relief almost a decade after being originally sentenced. It is too attenuated, in my view, to say that Bethany's case was "pending" or that "a sentence" had not been "imposed" on the date the First Step Act became effective. See § 401(c) of the First Step Act of 2018. But *Uriarte* is now the law of the Circuit and requires me to conclude, as the majority opinion does, that Bethany is entitled to the benefit of § 401 of the First Step Act. I otherwise agree in full with all other aspects of today's opinion.