# United States Court of Appeals
## For the First Circuit

No. 19-2025

UNITED STATES OF AMERICA,

Appellee,

v.

CARLOS CONCEPCION,
a/k/a BIG PAPI, a/k/a PAPI,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Howard, Chief Judge,
Selya and Barron, Circuit Judges.

J. Martin Richey, Assistant Federal Public Defender, for appellant.
Jennifer Hay Zacks, Assistant United States Attorney, with whom Andrew E. Lelling, United States Attorney, was on brief, for appellee.

March 15, 2021

**SELYA**, <u>Circuit Judge</u>. Defendant-appellant Carlos Concepcion pleaded guilty to possession with intent to distribute and distribution of cocaine base (crack cocaine) in 2008. The following year, the district court sentenced him to a 228-month term of immurement. While the defendant was serving his sentence, Congress passed the Fair Sentencing Act, Pub. L. No. 111-220, 124 Stat. 2372, which reduced the statutory penalties for most federal crimes involving crack cocaine in an effort to ameliorate sentencing disparities between crack cocaine offenses and powdered cocaine offenses.

In 2018, Congress made these changes retroactive through the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194, and the defendant moved for resentencing. The district court denied his motion, <u>United States</u> v. <u>Concepcion</u>, No. 07-10197, 2019 WL 4804780 (D. Mass. Oct. 1, 2019), and this timely appeal followed.

The defendant contends that the district court was obliged to, but did not, update and reevaluate the constellation of sentencing factors adumbrated in 18 U.S.C. § 3553(a). Relatedly, he contends that, pursuant to this obligation, the district court should have recalculated his guideline sentencing range (GSR) anew under the sentencing guidelines in effect at the time of resentencing.[1] Even if a recalculation of his GSR was not

---

[1] It is not clear whether the defendant seeks to have his GSR recalculated pursuant to the guidelines in effect at the time he

- 2 -

required, he submits, the district court should have given effect to guideline changes occurring subsequent to the imposition of his original sentence. Because we have not yet spoken definitively to the scope of resentencing under the First Step Act, this appeal presents issues of first impression in this circuit. After careful consideration, we reject the defendant's asseverational array and affirm the district court's order denying resentencing.

## I. BACKGROUND

We start by rehearsing the relevant facts and the travel of the case. In 2006, federal law enforcement officers in New Bedford, Massachusetts, monitored two drug transactions in which the defendant participated. Those transactions, in the aggregate, involved the sale of 27.5 grams of crack cocaine. Warrant-backed searches of the defendant's home and car turned up an additional 186.34 grams of powdered cocaine, two loaded firearms, and many rounds of ammunition.

In due course, a federal grand jury sitting in the District of Massachusetts charged the defendant with possessing with intent to distribute and distributing five grams or more of crack cocaine. See 21 U.S.C. § 841(a)(1) (2006). This charge

---

filed his motion for resentencing or, should his motion be granted, those in effect at the time of resentencing. As a shorthand, we refer in this opinion to the guidelines in effect at the time of resentencing. We note, however, that this appeal does not require us to explore the choice between these alternatives, and we leave the question open.

carried a statutory minimum penalty of five years' imprisonment and a statutory maximum penalty of forty years' imprisonment. See id. § 841(b)(1)(B)(iii). The government, acting pursuant to 21 U.S.C. § 851(a)(1), filed an information memorializing that the defendant had a prior felony drug-offense conviction, which doubled the mandatory minimum and boosted the maximum available sentence to life imprisonment. See id.

Although initially maintaining his innocence, the defendant eventually pleaded guilty to the single-count indictment. The probation department proceeded to prepare a presentence investigation report (PSI report). After tentatively concluding that the defendant had a total offense level of twenty-five and should be placed in Criminal History Category (CHC) V, the PSI report determined that the defendant qualified as a career offender under USSG §4B1.1(a). This determination rested, in part, on the fact that the defendant's criminal record included at least two prior felony convictions for crimes of violence and/or controlled substance offenses. Specifically, his criminal history revealed state convictions for distribution of crack cocaine, possession with intent to distribute powdered cocaine, armed carjacking, armed robbery, and assault and battery with a dangerous weapon. The career offender designation resulted in a total offense level of thirty-four, a CHC of VI, and a GSR of 262 to 327 months.

The district court convened the disposition hearing on May 6, 2009. The court adopted the final guideline calculations recommended in the PSI report (including the career offender designation). The defendant argued for a downwardly variant 120-month sentence (the mandatory minimum), and the government argued for a 262-month sentence (the bottom of the GSR). The court mulled the section 3553(a) factors and considered, among other things, the defendant's troubled youth and then-current guideline and policy developments. The court found that a below-the-range sentence of 228 months was "sufficient but not greater than . . . necessary," and therefore fair and just. Cf. Kimbrough v. United States, 552 U.S. 85, 111 (2007) (upholding downward variance when sentencing court had appropriately considered defendant's GSR, defendant's background, and Sentencing Commission's then-recent criticism of disparate treatment of crack cocaine offenses). The defendant appealed, and we summarily affirmed the challenged sentence. See United States v. Concepcion, No. 09-1691 (1st Cir. Dec. 30, 2009) (unpublished judgment).

This was far from the end of the matter. The defendant sought collateral review of his sentence through a motion filed pursuant to 28 U.S.C. § 2255. The district court denied the motion. Little daunted, the defendant — on August 1, 2016 — again moved to vacate his sentence under section 2255. The district court treated the motion as an application for leave to file a

- 5 -

second or successive section 2255 motion and referred it to this court. See 28 U.S.C. § 2255(h) (explaining that a second or successive motion under section 2255 "must be certified . . . by . . . the appropriate court of appeals"). We denied the application. See Concepcion v. United States, No. 16-2209 (1st Cir. Apr. 27, 2017) (unpublished judgment). Mistakenly believing that the third time was the charm, the defendant filed yet another section 2255 motion. That motion met a similar fate. See Concepcion v. United States, No. 17-1637 (1st Cir. July 31, 2017) (unpublished judgment).

Nearly two years later, the defendant moved pro se to reduce his sentence pursuant to the First Step Act. See Pub. L. No. 115-391, 132 Stat. 5194. He argued that the First Step Act, by retroactively raising the quantity of crack cocaine required to trigger the statutory penalty provision set forth in 21 U.S.C. § 841(b)(1)(B)(iii) (2018), reduced his statutory maximum sentence to thirty years, see 21 U.S.C. § 841(b)(1)(C), and shrank his GSR to 188 to 235 months. Once counsel was appointed, an additional argument was advanced on the defendant's behalf. This argument posited that the defendant no longer qualified as a career offender and, thus, should be regarded as having a GSR of fifty-seven to seventy-one months. The government opposed the motion: although it agreed that the defendant was eligible for resentencing under the First Step Act, it cited the leniency originally extended by

- 6 -

the district court and urged that a reduced sentence be withheld as a matter of discretion.

The district court, in a thoughtful rescript, denied the defendant's motion for resentencing. Concepcion, 2019 WL 4804780, at *2-6. This appeal ensued.

## II. ANALYSIS

The defendant assigns error to the district court's denial of his motion for resentencing. Specifically, he contends that in deciding whether to reduce his sentence pursuant to the First Step Act, the court was required to evaluate the 18 U.S.C. § 3553(a) factors anew and that, under sections 3553(a)(4) and (5), such a reevaluation entailed the preparation of a new PSI report, calculating a new GSR based on the guidelines in effect at the time of resentencing. As a fallback, the defendant contends that even if a new GSR calculation was not obligatory, the court should have at least considered intervening guideline developments as part of its calibration of the other section 3553(a) factors. Because the defendant's contentions hinge, in the first instance, on the nexus between the First Step Act and the Fair Sentencing Act, we turn directly to this nexus.

In 2010, Congress enacted the Fair Sentencing Act to ameliorate sentencing disparities between similarly situated defendants convicted of drug-trafficking offenses involving crack cocaine, on the one hand, and powdered cocaine, on the other hand.

See Dorsey v. United States, 567 U.S 260, 263-64 (2012). As the district court determined, this case fits comfortably within that paradigm. See Concepcion, 2019 WL 4804780, at *1-2. Prior to the passage of the Fair Sentencing Act, the defendant's conviction for an offense involving five or more grams of crack cocaine exposed him to a statutory sentencing range of five to forty years in prison. See 21 U.S.C. § 841(b)(1)(B)(iii) (2006). The Fair Sentencing Act increased the amount of crack cocaine needed to trigger this penalty range to twenty-eight grams. See Fair Sentencing Act § 2(a)(2). This change, however, did not apply retroactively. Consequently, it did not inure to the benefit of offenders — like the defendant — who were sentenced before August 3, 2010. See Dorsey, 567 U.S. at 280-81. As a result, the Fair Sentencing Act left in place disparate sentences for crack cocaine offenses meted out before August 3, 2010.

Congress sought to remedy this perceived inequity by enacting the First Step Act. Section 404 of the First Step Act applies specified portions of the Fair Sentencing Act retroactively to defendants whose sentences became final before August 3, 2010. Specifically, it provides that "[a] court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed." First Step Act § 404(b). To complete the picture,

- 8 -

the First Step Act defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act . . . that was committed before August 3, 2010." Id. § 404(a). Importantly, the First Step Act makes pellucid that the decision to impose or withhold a reduced sentence is a decision that rests within the sound discretion of the district court. See id. § 404(c) ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.").

Seen in this light, the defendant's offense is a covered offense within the purview of the First Step Act. In 2008, he pleaded guilty to a violation of 21 U.S.C. § 841(a). The offense to which he pleaded, coupled with his prior felony drug convictions, subjected him to a mandatory minimum term of ten years' imprisonment and exposed him to a maximum sentence of up to life imprisonment. See 21 U.S.C. § 841(b)(1)(B)(iii) (2006). And this statutory sentencing range was materially altered when the Fair Sentencing Act increased the triggering amount for the mandatory minimum penalty to twenty-eight grams. Taken in the ensemble, these developments brought the defendant's case under the carapace of the First Step Act. See United States v. Smith, 954 F.3d 446, 450 (1st Cir. 2020) (concluding that violation of 21 U.S.C. § 841(a)(1) involving crack cocaine is a covered offense under First Step Act).

The district court recognized that, because the offense of conviction was a covered offense, the First Step Act rendered the defendant eligible for a sentence reduction. The defendant argues that the court should have gone further: it should have reevaluated the section 3553(a) factors as of the date of the motion and commissioned a new PSI report — one reflecting that, under the current iteration of the sentencing guidelines, the defendant no longer qualifies as a career offender. In support, the defendant says that one of his prior drug convictions has been vacated and that emerging case law precludes some of his other predicate offenses from being classified as crimes of violence. See, e.g., United States v. Kennedy, 881 F.3d 14, 24 (1st Cir. 2018) (holding that Massachusetts conviction for assault and battery with dangerous weapon did not qualify as crime of violence under Armed Career Criminal Act); United States v. Starks, 861 F.3d 306, 319 (1st Cir. 2017) (same with respect to Massachusetts robbery).[2] We proceed to examine this argument.

---

[2] These cases were decided in light of Johnson v. United States, 576 U.S. 591 (2015), which held "that imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process." Id. at 606. Although the defendant was not sentenced as a career offender under the Armed Career Criminal Act, the United States Sentencing Commission amended the career offender guideline defining "crime of violence" by striking that provision's residual clause in response to Johnson. See USSG App. C Supp., Amend. 798 (effective Nov. 1, 2016); see also USSG §4B1.2(a) (2018).

The scope of resentencing under section 404 of the First Step Act is a question of statutory interpretation and, thus, engenders de novo review.  See Smith, 954 F.3d at 448; United States v. Gibbens, 25 F.3d 28, 32 (1st Cir. 1994).  Although we have not previously confronted this question, we have envisioned "at least two possibilities."  Smith, 954 F.3d at 452.  A defendant "might be eligible for plenary resentencing, in which case his GSR would potentially be recalculated under the current version of the Sentencing Guidelines Manual . . . or he might be eligible for a procedure . . . in which . . . his GSR would remain as it was [when he was sentenced] but the district court might nevertheless vary downwardly."  Id.  By demanding "at minimum a present day review of the section 3553(a) factors" and "a proper calculation of the guidelines in effect at the time of resentencing," the defendant seeks what amounts to a plenary review of his sentence.  Thus, this case brings front and center the question left open in Smith and requires us to decide whether a defendant's eligibility for First Step Act resentencing entitles him to plenary resentencing.

Although this is an issue of first impression in this circuit, we do not write on a pristine page.  At least five of our sister circuits have held, albeit in various contexts, that section 404 of the First Step Act does not entitle a defendant to plenary resentencing.  See United States v. Moore, 975 F.3d 84, 90-92 (2d Cir. 2020); United States v. Denson, 963 F.3d 1080, 1089 (11th

- 11 -

Cir. 2020); United States v. Kelley, 962 F.3d 470, 471 (9th Cir. 2020); United States v. Alexander, 951 F.3d 706, 708 (6th Cir. 2019); United States v. Hegwood, 934 F.3d 414, 415 (5th Cir.), cert. denied, 140 S. Ct. 285 (2019); cf. United States v. Hamilton, 790 F. App'x 824, 826 (7th Cir. 2020) (concluding that "district court did not plainly err by reducing [the defendant's] sentence without a plenary resentencing"). Four of these courts have squarely addressed whether First Step Act resentencing entitles a defendant to a reevaluation of his career offender status under subsequently amended but non-retroactive guidelines, and all of them have held that it does not. See Moore, 975 F.3d at 90-91; Kelley, 962 F.3d at 475-79; United States v. Foreman, 958 F.3d 506, 509-12 (6th Cir. 2020); Hegwood, 934 F.3d at 417-19.

This line of authority, though, is not uniform: four circuits have espoused a minority view. See United States v. White, 984 F.3d 76, 90 (D.C. Cir. 2020); United States v. Easter, 975 F.3d 318, 327 (3d Cir. 2020); United States v. Boulding, 960 F.3d 774, 784 (6th Cir. 2020); United States v. Chambers, 956 F.3d 667, 668 (4th Cir. 2020). For example, the Sixth Circuit has held that a First Step Act resentencing must "includ[e] an accurate calculation of the amended guidelines range at the time of resentencing." Boulding, 960 F.3d at 784. So, too, the Fourth Circuit, concluding (in a two-to-one opinion) that the First Step Act requires a present-day recalculation of a defendant's GSR, has

- 12 -

held that "any Guidelines error deemed retroactive . . . must be corrected in a First Step Act resentencing." Chambers, 956 F.3d at 668.

Mindful of this divided authority, we begin — as every exercise in statutory analysis should begin — with the text of the controlling statute (here, the First Step Act). The statute explicitly authorizes a "court that imposed a sentence for a covered offense" to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." First Step Act § 404(b) (emphasis supplied). That the First Step Act takes only sections 2 and 3 of the Fair Sentencing Act back in time, stipulating that a new sentence shall be meted out "as if" those sections (and only those sections) were in effect when the defendant committed the covered offense, is a compelling indication that Congress did not intend that other sections of the Fair Sentencing Act are to apply retroactively. See Kelley, 962 F.3d at 475; Hegwood, 934 F.3d at 418.

We add, moreover, that section 404(b) conspicuously constrains a sentencing court's list of newly applicable laws at a resentencing hearing to only the Fair Sentencing Act. Nothing in the First Step Act invites the district court to apply changes in the law external to the Fair Sentencing Act. See United States v. Smith, 958 F.3d 494, 498 (6th Cir. 2020) (observing that First

Step Act only provides "limited, discretionary authorization to impose a reduced sentence" which is "inconsistent with a plenary resentencing" (quoting Hegwood, 934 F.3d at 418)); Alexander, 951 F.3d at 708 (similar).  As the Kelley court explained, the First Step Act "authorizes the district court to consider the state of the law at the time the defendant committed the offense, and change only one variable:  the addition of sections 2 and 3 of the Fair Sentencing Act as part of the legal landscape."  962 F.3d at 475.  The consideration of Amendment 798 and current sentencing guidelines, as the defendant envisions, goes beyond the limits of this authorization.

The fact that the First Step Act vests a district court with wide discretion about whether to reduce a defendant's sentence for a covered offense, see First Step Act § 404(b); id. § 404(c), cuts in the same direction.  That Congress saw fit to afford district courts such wide discretion is in tension with the defendant's argument that the court was obliged to follow a specific procedure — a full reevaluation of the section 3553(a) factors and a mandatory recalculation of the defendant's GSR under current guidelines.

Along the same line, it is clear to us — and our dissenting brother agrees — that a First Step Act resentencing constitutes only a modification of an imposed term of imprisonment. Further Congressional circumscriptions on resentencing apply in

such cases, and those circumscriptions underscore the limited and discretionary nature of the authorization afforded to sentencing courts under the First Step Act. See Smith, 958 F.3d at 498. As a general matter, a final judgment in a criminal case may not be revisited by the sentencing court. See 18 U.S.C. § 3582(b)-(c); see also Dillon v. United States, 560 U.S. 817, 824 (2010). Of course, this rule — like many general rules — admits of certain exceptions. But in the absence of an applicable exception, "[a] court may not modify a term of imprisonment." 18 U.S.C. § 3582(c).

Two such exceptions are relevant here. Under the first, "the court may modify an imposed term of imprisonment to the extent . . . expressly permitted by statute." Id. § 3582(c)(1)(B). Under the second,

> "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. [§] 994(o), . . . the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

Id. § 3582(c)(2).

Because section 2 of the Fair Sentencing Act only reduced the statutory penalties applicable to defendants convicted of crack cocaine offenses, and did not address sentences already imposed, retroactive modification of sentences under the Fair

Sentencing Act prior to the First Step Act could be sought only "by reference to reductions in the sentencing range." United States v. Wirsing, 943 F.3d 175, 184 (4th Cir. 2019). And because those reductions were made "by the Sentencing Commission," section 3582(c)(2) constituted the appropriate exception to the finality of a sentence for those retroactive modification requests. Id. at 184-85.

A First Step Act motion, by contrast, is grounded in the Act's explicit authorization for a sentencing court to reduce a sentence, rather than on actions of the Sentencing Commission. For this reason, the appropriate framework for the evaluation of a § 404(b) motion is found in § 3582(c)(1)(B). See id.; United States v. Holloway, 956 F.3d 660, 665-66 (2d Cir. 2020) ("A First Step Act motion . . . is not properly evaluated under 18 U.S.C. § 3582(c)(2). . . . [S]uch a motion falls within the scope of § 3582(c)(1)(B)."). Accordingly, a sentencing court evaluating a section 404(b) motion may modify a sentence only to the extent "expressly permitted" by the First Step Act. See § 3582(c)(1)(B).

This exception is narrow:  by its terms, the First Step Act allows only "a specific type of sentence reduction." See Kelley, 962 F.3d at 477. The permission granted in section 404(b) is only permission to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect." And this type of sentence reduction is wholly discretionary. See First

Step Act § 404(b)-(c). It follows, we think, that mandatory enforcement of intervening changes in the law, not encompassed by sections 2 and 3 of the Fair Sentencing Act — in this instance, Amendment 798 and any newly updated guidelines — would fall outside the compass of the leave Congress granted under the First Step Act. Simply put, a First Step Act resentencing is not the correct vehicle through which a defendant may demand the benefits of emerging legal developments unrelated to sections 2 and 3 of the Fair Sentencing Act — and Congress has prohibited the courts from holding otherwise. See 18 U.S.C. § 3582(c).

In addition to these statutory limitations on a sentencing court's authority, we find persuasive the government's suggestion that a mechanical application of intervening changes in the law would lead to anomalous results. Congress enacted the Fair Sentencing Act to correct the unequal treatment of crack cocaine offenses as compared to powdered cocaine offenses. To interpret section 404(b) to allow certain crack cocaine offenders to avail themselves of case law unrelated to crack cocaine sentencing disparities would not create a level playing field but, rather, would put defendants convicted of crack cocaine offenses in a more advantageous position than defendants convicted of powdered cocaine offenses. Indeed, such an interpretation would put crack cocaine defendants who had committed covered offenses in

- 17 -

a more advantageous position than other criminal defendants generally.  See Kelley, 962 F.3d at 478.

We discern nothing in the text of either the Fair Sentencing Act or the First Step Act that warrants a conclusion that Congress intended to replace one set of sentencing disparities with another.  It would, therefore, be an exercise in judicial hubris to transmogrify a motion for resentencing under the First Step Act into an exclusive backstreet permitting the free-wheeling correction of putative errors in a defendant's GSR anytime that the guidelines change.  See Chambers, 956 F.3d at 676 (Rushing, J., dissenting) ("Congress's concern in Section 404 was to extend the cocaine sentencing provisions of the Fair Sentencing Act retroactively, not to provide a general opportunity to collaterally attack a final sentence.").

In a further effort to broaden the scope of First Step Act resentencing, the defendant invokes section 404(b)'s statement that a court may "impose a reduced sentence as if sections 2 and 3 . . . were in effect at the time the covered offense was committed."  First Step Act § 404(b).  Focusing with laser-like intensity on the word "impose," the defendant insists that this word choice evinces congressional intent that First Step Act defendants be resentenced under "the familiar . . . framework" of 18 U.S.C. § 3553(a).  This word choice is critically important, the defendant says, because the power to "impose" a sentence is

- 18 -

more expansive than the power either to "modify" a sentence or to "reduce" a sentence.  Similarly, he gives weight to the fact that the participle of "impose" is used in section 3553(a)'s enumeration of "factors to be considered in imposing a sentence."  We find this argument unconvincing.

At the outset, we note that the defendant's tunnel-vision reading of the word "impose" overlooks the express limiting language of the First Step Act:  the "as if" clause.  That clause permits a sentencing court to apply only sections 2 and 3 of the Fair Sentencing Act — and no more.  See Moore, 975 F.3d at 91 (explaining that "the First Step Act does not simply authorize a district court to 'impose a sentence' [but] authorizes the court to do so subject to the 'as if' clause").  The defendant's selective rendition of the First Step Act sidesteps this plain statutory language.

What is more, reading the word "impose" in isolation ignores the fact that the Act permits only a sentence reduction. First Step Act § 404(b)-(c).  Language has its limits and, situating the word "impose" in context, we are skeptical that a meaningful difference exists between "imposing" a reduced sentence and "reducing" a sentence.  In all events, no such difference has been articulated here. Viewed objectively, the fact that the First Step Act allows only a sentence reduction strongly suggests that the act does not authorize what would effectively be plenary

- 19 -

resentencing. See Alexander, 951 F.3d at 708 (noting that "authorization to impose a reduced sentence is inconsistent with a plenary resentencing"); cf. Dillon, 560 U.S. at 831 (concluding that 18 U.S.C. § 3582(c)(2) "does not authorize a resentencing" but "[i]nstead . . . permits a sentence reduction").

We add a coda. The defendant's entreaty that we mandate a fresh evaluation of the section 3553(a) factors would, if honored, impermissibly cabin the discretion that the First Step Act vests in the district court. It is to that, at an original sentencing, the district court, "in determining whether to impose a term of imprisonment shall consider the factors set forth in section 3553(a)." 18 U.S.C. § 3582(a). By contrast, though, a sentence reduction under the First Step Act is wholly discretionary. See First Step Act § 404(b)-(c). In our view, the wide discretion inherent in First Step Act resentencing undercuts the defendant's textual argument. See United States v. Moore, 963 F.3d 725, 727-28 (8th Cir. 2020) (rejecting argument that statutory use of "impose" requires consideration of section 3553(a) factors); Kelley, 962 F.3d at 477-78 (same); Foreman, 958 F.3d at 510-12 (same).

Nor need we linger long over the defendant's contention that our construction of the First Step Act is at odds with 18 U.S.C. § 3553(a). At the time of resentencing, a district court must place itself back at the date of the offense, altering the

- 20 -

legal landscape only by resort to sections 2 and 3 of the Fair Sentencing Act. See Hegwood, 934 F.3d at 418. This counterfactual exercise does not undo the sentencing court's original calibration of the section 3553(a) factors. See id. at 418-19 (explaining that resentencing under the First Step Act "is being conducted as if all the conditions for the original sentencing were again in place with the one exception"). Because the text and structure of the First Step Act do not support plenary resentencing, there is no principled way that we can find reassessment of the section 3553(a) factors mandatory.

The short of it is that the scope of a First Step Act resentencing is more circumscribed than the defendant envisions. Application of the First Step Act, which vests great discretion in the district court, raises two questions: the binary question of whether a defendant should be resentenced and the conditional question of what that new sentence should be. See Denson, 963 F.3d at 1087 ("The First Step Act leaves the choice of whether to resentence and to what extent to the district court's sound discretion."). Fairly viewed, such a proceeding entails a two-step inquiry by the district court. At the first step, the district court should determine whether resentencing of an eligible defendant is appropriate under the circumstances of the particular case. At this step, though, the district court's discretion is cabined by the limited permission that Congress saw

fit to grant under section 404(b). Consequently, the district court must place itself at the time of the original sentencing and keep the then-applicable legal landscape intact, save only for the changes specifically authorized by sections 2 and 3 of the Fair Sentencing Act. Cf. Kelley, 962 F.3d at 475 (adopting a two-step inquiry under which a district court should first "place itself in the counterfactual situation where all the applicable laws that existed at the time the covered offense was committed are in place, making only the changes required by sections 2 and 3 of the Fair Sentencing Act"). The court must then determine whether the defendant should be resentenced. Because section 3582(c)(1)(B) restricts a sentencing court's "permi[ssion]" to modify a sentence, a district court's decision to permit a modification must be based solely on the changes that sections 2 and 3 of the Fair Sentencing Act require to be made with respect to the defendant's original GSR. See Hegwood, 934 F.3d at 418 (holding that adjustment of defendant's GSR "'as if' the lower drug offense sentences were in effect at the time of the commission of the offense . . . is the only explicit basis . . . for a change in the sentencing"). If that determination is in the negative, the inquiry ends and any sentence reduction must be denied.

If, however, the district court's determination is in the affirmative, it may impose a reduced sentence under step two of the inquiry. It is at this step that a district court may, in

its discretion, consider other factors relevant to fashioning a new sentence. See Foreman, 958 F.3d at 513 (explaining that "First Step Act imposes no additional constraints on a district court's discretion once it determines the statutory and Guidelines ranges 'as if' the Fair Sentencing Act has been in effect before 2010"). Specifically, the discretion that the First Step Act vests in the district court leads to the logical conclusion — which we endorse — that "a district court may, but need not, consider section 3553 factors" in a reduction in sentence. Moore, 963 F.3d at 727. When mulling these factors, the court may choose to consider conduct that occurred between the date of the original sentencing and the date of resentencing. See United States v. Hudson, 967 F.3d 605, 612; Chambers, 956 F.3d at 674; United States v. Jackson, 945 F.3d 315, 322 n.7 (5th Cir. 2019).

So, too, the district court may consider guideline changes, whether or not made retroactive by the Sentencing Commission, once it reaches the second step of the resentencing pavane. After all, a district court may take into consideration any relevant factors (other than those specifically proscribed), including current guidelines, when deciding to what extent a defendant should be granted relief under the First Step Act.[3] See

_____

[3] The scope of this discretion is consistent with our case law allowing sentencing courts to consider intervening guideline amendments in other contexts. See, e.g., United States v. Ahrendt, 560 F.3d 69, 78-80 (1st Cir. 2009) (remanding for discretionary

- 23 -

Foreman, 958 F.3d at 513; see also United States v. Harris, 960 F.3d 1103, 1106 (8th Cir. 2020); Smith, 954 F.3d at 452 n.8. It follows, we think, that a district court, upon electing to fashion a reduced sentence pursuant to the First Step Act, may in its discretion order the preparation of a new PSI report. Such an updated PSI report may contain a revised GSR, based in part upon subsequent, non-retroactive guideline amendments. We emphasize, though, that this discretion is a two-sided coin, and the district court may choose to forgo a new PSI report entirely.

Our dissenting brother disagrees in part: he diverges from our view in his interpretation of the scope of the discretion that a resentencing court possesses when deciding whether to resentence a defendant under step one. In his view, the discretion that our opinion affords a district court under step two should extend to step one such that, in deciding whether resentencing is appropriate, the district court should be able to consider post-sentencing information. The main support for the dissent's proposition is that section 3582(c)(2), the vehicle through which defendants requested a retroactive application of the Fair Sentencing Act prior to the First Step Act, expressly allows a court to consider such information in its determination of

_____

resentencing based on non-retroactive guideline amendment); United States v. Godin, 522 F.3d 133, 136 (1st Cir. 2008) (per curiam) (similar).

"whether" to sentence a defendant. See 19 USSG §1B1.10 cmt. n.1(B)(iii) ("The court may consider post-sentencing conduct of the defendant that occurred after imposition of the term of imprisonment in determining: (I) whether a reduction in the defendant's term of imprisonment is warranted; and (II) the extent of such reduction . . . ."). Nevertheless, our dissenting brother argues that, in order to grant post-First-Step-Act defendants an opportunity for relief "roughly equivalent" to that afforded to previous defendants, the discretion to consider such information should apply in section 404(b) proceedings. Post at 60.

But we have determined — and our dissenting brother does not dispute — that section 3582(c)(1)(B), not section 3582(c)(2), governs section 404(b) proceedings. See supra at 16. Thus, "there is no reason to suppose that motions brought pursuant to 3582(c)(1)(B) are subject to the restrictions particular to § 3582(c)(2), which are grounded in the text of the latter statute." Wirsing, 943 F.3d at 185. Although the application of section 3582(c)(2) is expressly required to comport with section 1B1.10, neither section 3582(c)(1)(B) nor section 1B1.10 requires a sentence modification under section 3582(c)(1)(B) "to comport with U.S.S.G. § 1B1.10 or any other policy statement." Holloway, 956 F.3d 666. It follows that "the defendant's eligibility turns only on the statutory criteria" in section 3582(c)(1)(B) and the First Step Act. Id.

In fact, the deficiencies in pre-First-Step-Act resentencing that our dissenting brother identifies were wholly ameliorated by the removal of the restrictions that section 1B1.10 imposed on section 3582(c)(2) proceedings. Prior to the First Step Act, a defendant was not eligible for a sentence reduction if the sentencing amendments introduced by the Fair Sentencing Act did not have the effect of lowering the defendant's GSR or if the defendant had been originally sentenced as a career offender. United States v. Stewart, 964 F.3d 433, 436 (5th Cir. 2020). Both of these categories of sentence-reduction denials emerged a result of section 1B1.10 restrictions on section 3582(c)(2) proceedings. See id. In explicitly authorizing sentence modifications in the First Step Act, Congress purposefully excised reductions related to the Fair Sentencing Act from the realm of section 3582(c)(2), thereby relieving section 404(b) proceedings from section 1B1.10 restrictions. See Holloway, 956 F.3d at 667 ("A defendant's eligibility for a reduced term of imprisonment under Section 404 of the First Step Act is not governed by 18 U.S.C. § 3582(c)(2), and thus a district court considering such a motion is not constrained by U.S.S.G. § 1B1.10[]."); 18 U.S.C. § 3582(c)(1)(B). The inference that certain portions of section 3582(c)(2) should animate section 404(b) proceedings that take place under a different statutory provision simply does not follow.

It is also not clear why only certain portions (as opposed to all) of the limitations applicable to section 3582(c)(2) should pertain to First Step Act resentencings. As our dissenting brother points out, in a court's determination of whether a defendant should be resentenced under section 3582(c)(2), the consideration of post-sentencing information is permissive. See Post at 60; see also 19 USSG §1B1.10 cmt. n.1(B)(iii). In that same determination, though, the consideration of section 3553(a) factors is obligatory. See 19 USSG §1B1.10 cmt. n.1(B)(i). But the dissent does not argue that such an obligation applies to section 404(b) proceedings. The same is true, for example, of the section 1B1.10 prohibition on sentence reductions in which an amendment does not lower a defendant's GSR. Even though nothing in the First Step Act disavows this limitation, our dissenting brother infers that this specific provision does not apply to section 404(b) proceedings. Absent a Congressional directive to apply limitations on relief expressly applicable to one statutory provision to another statutory provision, we see no justification for picking and choosing from the section 1B1.10 list of limitations.

We make one final observation: there is not much daylight between the position that we take and the position taken by our dissenting brother. Indeed, the only defendants who would be denied a sentence reduction under our framework but who would

be successful under our dissenting brother's vision are those defendants for whom the Fair Sentencing Act was alone insufficient to justify a reduction. This result not only comports with, but also is mandated by, the applicable statutory restrictions.

The sole remaining issue is whether the district court abused its discretion by denying the defendant's motion for resentencing. "An abuse of discretion 'occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them.'" United States v. Soto-Beníquez, 356 F.3d 1, 30 (1st Cir. 2003) (quoting Indep. Oil & Chem. Workers, Inc. v. Procter & Gamble Mfg. Co., 864 F.2d 927, 929 (1st Cir. 1988)).

In this instance, the district court carefully analyzed the First Step Act and its application to the defendant's situation. It concluded that the defendant was eligible for resentencing and focused on whether resentencing would be appropriate as a matter of discretion. Deciding that resentencing was not warranted, the court stressed its initial leniency. It made particular note that the downwardly variant sentence it had imposed in 2009 was within the new GSR dictated by the provisions of the Fair Sentencing Act. The court proceeded to consider the amended career offender guideline, noted that the Sentencing Commission had declined to make it retroactive, and decided not to

pantomime it as a matter of discretion. Summing up, the court observed that if the defendant "came before the Court today and the Court considered only the changes in law that the Fair Sentencing Act enacted, his sentence would be the same." Consistent with this observation, the court concluded that the original 228-month sentence was "fair and just" in 2009 and "remains so today."

We discern nothing resembling a misuse of the sentencing court's discretion. The court weighed the proper mix of factors, considered everything of consequence, and made a judgment that was both reasoned and reasonable. That judgment was well within the encincture of the court's discretion. No more was exigible.

## III. CONCLUSION

We need go no further. For the reasons elucidated above, the judgment of the district court is

**Affirmed**.

**-Dissenting Opinion Follows-**

**BARRON**, **Circuit Judge**, **dissenting**. The majority finds no abuse of discretion in this case. But it is a classic abuse of discretion for a district court to decline to exercise the discretion that it legally possesses because it mistakenly believes that it lacks that discretion as a matter of law. In my view, that is exactly what happened here when, upon Carlos Concepcion's request for a sentence reduction pursuant to § 404(b) of the First Step Act, the District Court declined to give any consideration to the favorable intervening change to the career offender Guideline that the United States Sentencing Commission had made since that Guideline had been applied at his original sentencing proceeding. See U.S.S.G. app. C supp., amend. 798 (eliminating the residual clause from the "crime of violence" definition at U.S.S.G. § 4B1.2(a)). I thus am convinced that we must vacate and remand the District Court's ruling denying Concepcion the relief that he seeks pursuant to § 404(b).

To explain my reasoning, it is necessary to pan out from Concepcion's particular case. This broader perspective reveals not merely the problem with the District Court's ruling on this record but also where, in my view, the majority has erred more generally in construing § 404(b), which states: "A court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time

the covered offense was committed."  First Step Act of 2018, Pub. L. No. 115-391, § 404(b), 132 Stat. 5194, 5222.[4]

Through this provision of the First Step Act, Congress addressed what had been one of the most glaring inequities in our highly punitive federal sentencing framework -- the substantially disparate treatment, under both statutory law and the United States Sentencing Commission's Guidelines, accorded offenses involving crack cocaine relative to those involving powder cocaine.  Section 404(b) mitigates that inequity by making retroactive the otherwise prospective-only Fair Sentencing Act, which Congress enacted to lessen that disparate treatment.

Given the remedial nature of this legislative effort, it is a mistake in my view to attribute to Congress an intention to constrain district courts from exercising the kind of discretion under this provision that they typically may exercise when they have been authorized to rectify sentences that time has shown to have been unduly harsh.  Cf. 18 U.S.C. § 3582(c)(2) (permitting sentence reductions for defendants whose sentences were "based on a sentencing range that has subsequently been lowered by the Sentencing Commission").  Yet, as I will explain, the majority's

---

[4] Section 404(a) of the First Step Act provides the class of offenses -- "covered offenses" -- for which the relief provided for in § 404(b) may be sought. Section 404(c) places limitations, not relevant here, on circumstances in which relief may be sought and also makes clear that a district court is not required to reduce any sentence under § 404(b).

construction of § 404(b), by limiting district courts' ability to take account of intervening developments (beyond the retroactive application of the Fair Sentencing Act that § 404(b) itself brings about), will have that precise consequence in certain important respects.

I begin by describing in greater detail the particular questions about the meaning of § 404(b) that this appeal requires us to resolve. I then describe how the majority answers them and why I conclude that certain of those answers are mistaken. Finally, I explain why in my view the District Court's ruling here cannot be sustained.

## I.

District courts enjoy substantial discretion in selecting a defendant's sentence. True, they must set it within the prescribed statutory maximum and minimum sentence (if applicable), and they must do so after properly calculating the range for the sentence that the United States Sentencing Commission recommends through the Guidelines that it promulgates. But, at least in the original sentencing proceeding, a district court need not set the sentence at any particular point within either range -- or, it bears mention, within the range at all in the case of the Guidelines Sentencing Range ("GSR").

Questions do necessarily arise, though, as to the considerations that may inform both the district court's

determination of the sentence once the applicable sentencing range has been identified and the calculation of the range itself. And these questions arise as much in a proceeding to revisit a sentence already imposed (such as on remand from a direct appeal or in a proceeding to modify under 18 U.S.C. § 3582(c)(2)) as they do in a proceeding to impose a sentence for the first time.

One factor that bears on these considerations is the focus of our concern in Concepcion's case and that factor is temporal in nature. It concerns the point in time after the underlying offense has been committed at which the clock stops, such that the district court is then barred from giving weight in the defendant's sentencing proceeding to any subsequent developments (whether factual, such as post-offense conduct by the defendant, or legal, such as amendments to the Guidelines that the Commission may have made).

The resolution of this temporal choice may matter greatly to the outcome of the sentencing proceeding. It will affect not only the ingredients that the district court may rely on in calculating the GSR that it will use in that proceeding but also the ingredients that it then may rely on in deciding, based off of that GSR, the sentence itself.

In the context of the original sentencing proceeding, it is relatively clear that the clock stops in most respects only when the sentencing proceeding itself begins. Thus, barring any

ex post facto concerns, the district court must use the Guidelines in effect at the time of that sentencing proceeding -- rather than, say, those in effect at the time the defendant committed the offense -- to calculate the GSR that will serve as the benchmark for the sentence to be imposed at that proceeding. See David v. United States, 134 F.3d 470, 475 (1st Cir. 1998); see also Gall v. United States, 552 U.S. 38, 50 (2007). Similarly, when setting both the GSR and the actual length of the sentence in relation to that range in such an original sentencing proceeding, the sentencing judge may consider any other pertinent developments (including factual ones) that have occurred up to the moment of the sentencing. See 18 U.S.C. § 3553(a); see also, e.g., United States v. Jordan, 549 F.3d 57, 61 (1st Cir. 2008).

In the context of revisiting proceedings, it also is clear that the clock does not stop at the time the defendant committed the underlying offense. But, there necessarily arises in that context this new temporal choice: Is the sentencing proceeding that stops that clock the one that was held to impose the original sentence or the one that is being held thereafter to revisit it?

Concepcion's appeal requires that we answer that specific question of timing and that we do so in the particular context of proceedings that are held pursuant to § 404(b). Concepcion contends that the District Court abused its discretion

in his case under § 404(b) precisely because it stopped the clock at the time of his original sentencing proceeding and thus refused to consider at his § 404(b) proceeding subsequent developments (both legal, like the amendment to the career offender Guideline mentioned above, but also factual) that he contends pointed in favor of reducing his sentence. He further contends that the District Court's refusal to consider those intervening developments prejudiced his ability to receive the sentence reduction that he contends that he was due under that provision, such that the ruling denying him relief under § 404(b) must be vacated and remanded.

**II.**

Having isolated the precise issue before us -- and the temporal nature of it -- how should we go about resolving it? As I will explain, the answer does not exactly leap off the pages of the statute book.

Section 404(b), by its plain terms, does make clear -- through its use of the word "reduced" -- that it is authorizing a district court to adjust a sentence that has already been imposed rather than to impose one anew. And, in that respect, the provision is best read to be authorizing a revisiting proceeding, notwithstanding the text's use of the word "impose."

In addition, § 404(b) makes clear that the district court must revisit the original sentence in a counterfactual

- 35 -

manner. As the text states, in deciding to "impose a reduced sentence," the district court must proceed "as if" the Fair Sentencing Act had been in effect when the underlying offense was committed.

And, the text of § 404(b) also makes perfectly clear still one more thing that is relevant to our inquiry. It establishes that the district court will be making the reduction decision in the here and now and thus, necessarily, at a time when it is at least possible for it to know of post-sentencing developments beyond the one singled out in the "as if" clause. After all, at that earlier time, those developments -- like the mandate to retroactively apply the Fair Sentencing Act itself -- had not yet occurred.

But, § 404(b) is more cryptic than clear when it comes to the following additional question of timing that it necessarily also prompts: Is the district court in making the reduction decision in the here and now supposed to blind itself to the present state of the world beyond the fact of the existence of that new mandate imposed by the "as if" clause? And, the text is similarly hard to decipher when it comes to related questions that necessarily arise insofar as the district court may take that broader peek at the present in making such a reduction determination, such as: What is the extent of the present-day

knowledge that it may draw upon and for what purposes may it do so?

Is the text saying to the district court that it must go back in time to the moment of the original sentencing proceeding, make the one alteration to that prior state of the world that the "as if" clause compels, and then make the reduction decision without accounting for what is now also known? Is it saying instead that the district court should simply be exercising the same type of discretion to reduce the sentence at hand that it ordinarily has in revisiting a sentence already imposed based on some change in the law, such as in a run-of-the-mill modification proceeding or on a remand from a direct appeal? Or, is § 404(b) saying instead something distinct from either of those two positions and, if so, what?

In my view, one could stare at the text of § 404(b) all day long looking for answers to those questions and not find them. It is only by placing that text in the context of the overall federal sentencing framework in which it is embedded that it is possible to discern answers to them. In what follows, then, I explain what supplies that context for me and what answers emerge from it. But, it helps first to set forth more fully how the majority reads § 404(b) to answer those same questions, as doing so will make it clearer both why and how I diverge from its approach.

**A.**

The majority reads § 404(b) to require the district court to engage in a two-step inquiry once it determines that the defendant was originally sentenced for an offense that is covered by that provision. Those two steps are to be carried out -- temporally speaking -- as follows.

The first step of this inquiry, according to the majority, requires the district court to make a gating judgment in which it must ask: Is any reduction in the original sentence appropriate at all? And, according to the majority, the district court in answering that question must set aside a presentist mindset and transport itself back in time to the moment of the original sentencing proceeding.

Then, having engaged in that time travel, under the majority's approach to this first step of the inquiry, the district court, in keeping with § 404(b)'s "as if" clause, must make just one adjustment to the state of the world as it then existed. It must proceed at the § 404(b) proceeding "as if" the Fair Sentencing Act had been in effect at the time the defendant committed the underlying offense.

As a result, under the majority's approach, the district court at this first step of the inquiry must alter the GSR that applied at the defendant's original sentencing proceeding -- based as it necessarily was on the Guidelines that were in effect at

- 38 -

that earlier time.  Or, at least, it must do so in accord with any alteration in the then-applicable statutory sentencing range that would be required by the retroactive application of the relevant provisions of the Fair Sentencing Act that § 404(b) itself brings about.

Finally, after having made that one adjustment to the world as it was back then, the district court on the majority's view must go on at this first step of the § 404(b) inquiry to make the critical gating determination.  In other words, to complete the first step, the district court must decide, based on only the inputs thus far described, whether to reduce the defendant's original sentence given that newly adjusted range.

The majority does conclude that a district court conducting a § 404(b) proceeding is not so temporally constrained once it arrives at the second step of the two-step inquiry.  At that second step, according to the majority, the district court may take account of what it could not at step one -- intervening factual developments, such as post-sentencing conduct by the defendant, and intervening legal developments, such as amendments to the Guidelines that are favorable to the defendant's cause, whether or not they are themselves retroactive.

The district court's sole temporal constraint at this second step, then, is relatively minimal.  It is implicit in the majority's approach that, in considering those intervening

developments -- whether factual or legal -- the district court at this second step must use the GSR that has been calculated based on the Guidelines from the original sentencing proceeding rather the ones in effect at the time of the § 404(b) proceeding itself. But, once it is so rooted in that way, it is free to account for all that it now knows.

Yet, as much as the majority is willing to permit the district court to adopt a more presentist mindset in this important respect at step two of the inquiry, it is crucial to keep in mind how temporally constrained the majority's approach remains overall. After all, it is critical to the majority's construction of § 404(b) that the second step of this two-step inquiry does not itself concern the threshold question -- posed only at the first step -- of whether the defendant's sentence should be reduced. It instead concerns only the ancillary and follow-on question of how much the sentence should be reduced, which is a question that arises on the majority's account if and only if the decision at the first step to reduce the sentence at all has already been made to the defendant's benefit.

Thus, the upshot of the majority's approach, taken as a whole, is this: no post-sentencing developments other than the First Step Act's own mandate to give retroactive effect to the Fair Sentencing Act may inform the district court's decision as to whether to reduce the defendant's sentence. Accordingly, under

the majority's approach, no weight may be given at all in making that critical threshold judgment to (1) post-sentencing statutory or Guidelines changes unrelated to the crack-powder disparity, (2) the overturning of the defendant's prior convictions that had been relied on to determine his criminal history category, or even (3) the defendant's admirable post-sentencing conduct.  And that is so not only when it comes to deciding what considerations may inform the setting of the GSR to be used at the § 404(b) proceeding but also when it comes to deciding whether any reduction at all is warranted in the defendant's original sentence given the GSR that applies at that proceeding to revisit that sentence.

**B.**

For the reasons that I will next explain, I do not share the majority's bifurcated understanding of how a district court may proceed -- temporally speaking -- under § 404(b).  No other circuit distinguishes between the "whether to reduce" and "how much to reduce" determinations with regard to the consideration that a district court may give under that provision of the First Step Act to developments that post-date the original sentencing proceeding (beyond, of course, the development expressly brought about by the First Step Act's requirement to apply the Fair Sentencing Act retroactively).[5]  And, even assuming that the

---

[5] Other circuits have, however, adopted the slightly different two-step approach that I advance, in which the GSR calculation is

- 41 -

reduction decision is not better conceived to be a more holistic endeavor than the majority makes it out to be, I see no reason that we should become the first circuit to do so.

I note that § 404(b) supplies no textual support that I can see for distinguishing between these two types of discretionary determinations in the manner that the majority does. That provision appears merely to make a unitary discretionary grant of authority to "impose a reduced sentence" without purporting to carve it up into discrete judgments subject to distinct temporal constraints.[6]

---

constrained but both discretionary questions -- whether and how much to reduce the sentence -- can be informed by at least some intervening developments. See, e.g., United States v. Foreman, 958 F.3d 506, 513 (6th Cir. 2020) ("[A] district court is authorized to do two things with respect to a defendant's covered offense: (1) determine the statutory and Guidelines ranges 'as if sections 2 and 3 of the Fair Sentencing Act were in effect at the time the covered offense was committed,' and (2) exercise its discretion to impose a new sentence somewhere between the revised statutory minimum and the existing sentence. . . . [T]he First Step Act imposes no additional constraints on a district court's discretion once it determines the statutory and Guidelines ranges 'as if' the Fair Sentencing Act had been in effect before 2010."); see also United States v. Moore, 975 F.3d 84, 89 (2d Cir. 2020) ("First, the court must determine whether the defendant is eligible for a reduction. Second, if the defendant is eligible, the court must determine whether, and to what extent, to exercise its discretion to reduce the sentence."); United States v. McDonald, 944 F.3d 769, 771 (8th Cir. 2019) (similar).

[6] Concededly, that grant of authority in § 404(b) is conditional, but the chief condition -- set forth in the "as if" clause -- does not by terms purport to speak to whether the clock stops at the original sentencing proceeding or the § 404(b) proceeding as to either the question of whether to reduce the original sentence or the question of by how much to reduce it if

- 42 -

Moreover, the background against which § 404(b) was enacted and the purposes that underlie that provision combine in my view to demonstrate the problems with the way the majority resolves the ambiguities in § 404(b)'s text as to at least certain of the temporal questions presented here. For, as I will explain, that background and those purposes indicate to me that this text should be construed to give the district court not only the discretion that the majority would afford it to account for intervening developments in deciding how much to reduce a sentence but also that same amount of discretion to account for those same intervening developments in making the threshold determination about whether to reduce the sentence at all. Or, at least, the background and purposes suggest to me that the district court has such discretion once it has calculated the GSR based on the Guidelines that were in effect at the time of the original sentencing proceeding while duly accounting for the application of the Fair Sentencing Act mandated by § 404(b)'s "as if" clause.

**1.**

The majority implicitly accepts that the first temporal question that arises under § 404(b) is not the "whether to reduce"

_____

a reduction of any sort is in order. Thus, that conditioning "as if" clause draws no distinction between the "whether" and the "by how much" determinations. The clause on its face speaks instead only to the sentencing range that must be applied in the § 404(b) proceeding that must serve as the anchor for both of those determinations.

one that is its focus at the first step of its approach.  Rather, the first temporal question is the logically prior one concerning how the district court must calculate the GSR to be used in the § 404(b) proceeding.  Indeed, under the majority's approach, the Fair Sentencing Act-adjusted GSR supplies the "initial benchmark" for the determinations that must be made under § 404(b) at each of the two steps it identifies.  See <u>Gall</u>, 552 U.S. at 49.[7]

Thus, although the majority's two-step approach appears to me to collapse the temporal question of whether the old or the new Guidelines must be used to calculate that GSR into the necessarily follow-on temporal question of which considerations (old or new) may inform the "whether to reduce" determination, I think it is important separately to analyze that antecedent

---

[7] Section 404(b) of the First Step Act does not by its terms require the district court to determine the newly applicable GSR before deciding whether to reduce the defendant's original sentence.  That provision incorporates provisions of the Fair Sentencing Act that change the statutory penalties setting the mandatory maximum and minimum sentence for certain crimes involving cocaine base.  See Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372.  For defendants sentenced as career offenders, as Concepcion was, these statutory penalty changes affect the applicable GSR, too, because the offense level under the career offender Guideline is keyed to the statutory maximum for the offense of conviction.  See U.S.S.G. § 4B1.1(b).  The parties do not dispute that the district court must adjust the GSR at least to account for these changes.  And, doing so as the initial step in a sentencing proceeding is the standard practice across sentencing contexts, including in those modification proceedings permitting a district court to revisit a sentence in light of certain subsequent legal developments.  See <u>Gall</u>, 552 U.S. at 49; <u>Dillon</u> v. <u>United States</u>, 560 U.S. 817, 827 (2010).

question first.  For, while I agree with the majority that the calculation of the GSR to be used at the § 404(b) proceeding must be based -- in the main -- on the old Guidelines, the reasons that lead me to that conclusion do not in my view support the majority's resolution of the follow-on temporal question regarding the "whether to reduce" determination.

**a.**

Notably, the text of § 404(b) does not itself have much to say about which version of the Guidelines -- old or new -- is to be used to calculate the GSR that will control at a § 404(b) proceeding.  There is no express reference in this provision to the GSR that applies, let alone to how the GSR that is to be used at such a proceeding is to be calculated.

The provision's "as if" clause does -- at least impliedly -- make clear that the GSR that applies in a § 404(b) proceeding cannot be the same one that was used in the original sentencing proceeding, at least insofar as the one that was used at that earlier time had been keyed to a statutory maximum that would not apply if the relevant Fair Sentencing Act provisions then had been in effect.  Otherwise, the taint of the disparate treatment of crack-cocaine offenses that the First Step Act aims to address would carry through to the § 404(b) proceeding itself.

But, the "as if" clause does not make similarly clear whether, in calculating the GSR to be used at a proceeding under

- 45 -

that provision, the district court must use the Guidelines that were in effect at the time of the original sentencing proceeding or those Guidelines that are in effect at the time of that revisiting proceeding. It simply does not address that question.

That is not to say that the "as if" clause makes no temporal reference. It plainly does. But, it does so only by referring back to the time of the commission of the offense. And, while that time frame is one that makes sense for purposes of determining the statutory penalties, see Dorsey v. United States, 567 U.S. 260, 272-73 (2012), it is not one that speaks to the version of the Guidelines that Congress intended for the district court to use in calculating the GSR in § 404(b) proceedings. At the time of the offense's commission, after all, there had been no sentencing proceeding -- original or otherwise.

Nor can the "as if" clause be thought to offer an implicit resolution of the temporal question concerning which version of the Guidelines to use in calculating the GSR for the § 404(b) proceeding itself. That clause would not be rendered wholly superfluous, for example, if § 404(b) were construed to require that the Guidelines used to calculate the GSR for such a proceeding were the ones that are in effect at the time of that proceeding (save for any ex post facto concerns), rather than the ones that were in effect at the time of the original sentencing proceeding. Indeed, in that event, the "as if" clause still would

usefully perform a clarifying role, by making plain how far back in time the Fair Sentencing Act would apply retroactively.

All that said, the text of § 404(b) is not a complete cipher with respect to the temporal question at hand. The reference to a "reduced" sentence in § 404(b) does provide a possible clue as to what Congress intended on that score, as it necessarily takes the district court back to the earlier sentence that the defendant originally received and thereby accords with the notion that the district court in a § 404(b) proceeding should understand itself to be adjusting -- or determining whether to adjust -- a sentence that has already been imposed rather than to be imposing an entirely new one afresh.

Accordingly, the provision's text does in this respect provide a hook for concluding that Congress intended the district court to use the version of the Guidelines to calculate the GSR to use at the § 404(b) proceeding that it uses in other contexts in which it has been charged with revisiting a previously imposed sentence for a possible reduction. Nor do I think we strain the word "reduced" too much by reading it to provide this hook.

It is a familiar interpretive precept that, in resolving a statutory ambiguity, we may look to the pre-existing legislative foundation on which a new measure builds for insight into what Congress meant by the words it enacted. It thus makes sense to me to look to what came before § 404(b) in analogous contexts to

resolve the ambiguity that is at issue here, which concerns the version of the Guidelines to use at the § 404(b) proceeding. See United States v. Martin, 974 F.3d 124, 139 (2d Cir. 2020) (noting that "[t]o the extent the First Step Act is silent," it "makes sense to look to . . . analogous resentencing proceeding[s]" given that "it is more likely that Congress was adopting, rather than departing from, established assumptions about how our legal or administrative system works" (quoting Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin., 760 F.3d 151, 166 (2d Cir. 2016))).

**b.**

Such a review turns out to be most instructive. It reveals that, unlike in original sentencing proceedings, district courts in revisiting proceedings do not generally use the Guidelines that are in effect at the time of those proceedings.

To the contrary, it has been clear since at least the 2003 enactment of 18 U.S.C. § 3742(g)(1) that on remand a district court is to apply the Guidelines that were in effect at the time of a defendant's original sentencing to calculate the GSR that will be used in determining the punishment in the resentencing. See PROTECT Act, Pub. L. No. 108-21, 117 Stat. 650 (2003) (codified at 18 U.S.C. § 3742(g)) ("In determining the range referred to in subsection 3553(a)(4), the court shall apply the guidelines issued by the Sentencing Commission . . . that were in effect on the date of the previous sentencing of the defendant prior to the appeal,

together with any amendments thereto by any act of Congress that was in effect on such date . . . ."). And, in the seemingly even more analogous context of sentence modification proceedings under 18 U.S.C. § 3582(c)(2), the relevant statutory text has been understood by no less seasoned an interpreter than the United States Sentencing Commission in a way that led it similarly to require district courts to use the Guidelines provisions applied at the original sentencing proceeding (as modified only by the particular retroactive amendments that were the basis for the § 3582(c)(2) motion) to calculate the GSR for the modification proceedings themselves. See U.S.S.G. § 1B1.10(b)(1); see also 28 U.S.C. § 994(a)(2)(C) (providing that the Commission shall promulgate policy statements "that in the view of the Commission would further the purposes set forth in [18 U.S.C. § 3553(a)(2)], including the appropriate use of . . . the sentence modification provisions set forth in" 18 U.S.C. § 3582(c)).

Thus, against that backdrop, I see little reason to assume that Congress meant for a revisiting proceeding under § 404(b) to be temporally distinct in such a fundamental respect from other revisiting proceedings. Indeed, in light of the well-known practice in other types of revisiting proceedings of not setting the GSR to be used in them on the basis of contemporary Guidelines, it is reasonable to expect that if Congress did intend to depart from that practice here it would have been at least as

- 49 -

clear in making that intention known as it was in pronouncing in the "as if" clause that the otherwise inapplicable Fair Sentencing Act would apply.  See Martin, 974 F.3d at 139-40.

## c.

This understanding of § 404(b) is reinforced by the First Step Act's apparent purposes.  Following the enactment of the Fair Sentencing Act, some defendants sentenced under the former disparity-tainted regime were able to have their sentences revisited pursuant to 18 U.S.C. § 3582(c)(2), based on the retroactive amendments that the Sentencing Commission promulgated in response to the Fair Sentencing Act.  See Dorsey, 567 U.S. at 273 (explaining that the Fair Sentencing Act "require[d] the Commission to change the Guidelines in the wake of the Act's new minimums").  But, given the limitations on eligibility for § 3582(c)(2) relief, significant gaps to relief remained -- individuals sentenced as career offenders, like Concepcion, as well as those serving statutory mandatory minimum sentences and those whose GSR otherwise would not change as a result of the Commission's responsive amendments, were ineligible to have their sentences revisited under § 3582(c)(2).  See United States v. Wirsing, 943 F.3d 175, 179 (4th Cir. 2019) (explaining these gaps).

A reading of § 404(b) under which the Guidelines from the original sentencing proceeding (as adjusted by the impact of the retroactive application of the Fair Sentencing Act) also serve

as the starting point for calculating the GSR for the revisiting proceeding enables § 404(b) to fill those gaps. See 164 Cong. Rec. S7020, S7021 (daily ed. Nov. 15, 2018) (statement of Sen. Durbin) (describing bill with the text ultimately passed in § 404 as "giv[ing] a chance to thousands of people who are still serving sentences for nonviolent offenses involving crack cocaine under the old 100-to-1 rul[e] to petition individually" for a sentence reduction). But such a reading also ensures that § 404(b) fills them in a manner that, sensibly, does not entitle the class of defendants to whom this opportunity for relief has been extended to a form of review of their original sentences based on a GSR calculated under a new and more favorable set of Guidelines than prevailed at their original sentencing just because they happened to become eligible for post-Fair Sentencing Act review later than those who were eligible to secure it through the auspices of § 3582(c)(2). See United States v. Brown, 974 F.3d 1137, 1144 (10th Cir. 2020) ("Our review demonstrates that Congress, when passing § 404, authorized only a limited change in the sentences of defendants who had not already benefitted from the Fair Sentencing Act. . . . It follows that the First Step Act also does not empower the sentencing court to rely on revised Guidelines instead of the Guidelines used at the original sentencing."); accord United States v. Moore, 975 F.3d 84, 91 (2d Cir. 2020).

**d.**

Thus, I agree with the majority's resolution of the first temporal question that § 404(b) presents, which concerns the proper means of calculating the GSR to be used at a proceeding held pursuant to that provision. Like the majority, I agree that the Guidelines to be used in calculating the GSR for that type of proceeding -- at least absent subsequent clarifying or retroactive amendments to them -- are the ones that were used in setting the GSR used at the original sentencing and not those in effect at the time of the § 404(b) proceeding itself.[8]

**2.**

We come, then, to the distinct and follow-on temporal question that § 404(b) also requires us to resolve, which concerns

---

[8] I do not read any circuit to have expressly held that the district court must apply the current Guidelines to determine the GSR for a § 404(b) proceeding. And, given the nature of Concepcion's arguments to us, we need not decide whether intervening Guidelines amendments that are merely clarifying, cf. U.S.S.G. § 1B1.10(a)(2) (providing that "if a court applies an earlier edition of the Guidelines Manual" due to ex post facto concerns, "the court shall consider subsequent amendments [so long as they] are clarifying rather than substantive changes"); United States v. Sarmiento-Palacios, 885 F.3d 1, 4-5 (1st Cir. 2018) (discussing the use of clarifying amendments in remand proceedings), or that are themselves retroactive, see United States v. Bethany, 975 F.3d 642, 652-53 (7th Cir. 2020) (concluding that "although the district court could have exercised its discretion to apply" retroactive Guidelines amendments to save the defendant the "extra step of filing a motion under § 3582(c)(2)," "it was not required to do so"); but see, e.g., United States v. Caraballo, 552 F.3d 6, 11 (1st Cir. 2008) (noting that § 3582(c)(2) is unavailable to defendants sentenced as career offenders where the retroactive amendment sought to be considered is not a change

whether a district court conducting a proceeding pursuant to that provision is just as temporally constrained when it comes to the "whether to reduce" question as it is in setting the GSR. But, deploying the same interpretive logic that I deployed above to answer this temporal question, I conclude that the majority is wrong to resolve the temporal question in the constraining manner that it does. For, as I will explain, the background to, and the purposes of, § 404(b) require me to conclude, unlike the majority, that the provision's textual ambiguities are best construed to permit a district court in deciding whether to reduce the defendant's original sentence to account for post-sentencing developments (whether factual or legal) no less than the majority

---

to the career offender Guideline); United States v. Stewart, 964 F.3d 433, 437-38 & 437 n.6 (5th Cir. 2020) (noting that for some defendants, such as career offenders, ineligible for § 3582(c)(2) relief, the "prospect of relief under the [Fair Sentencing Act] would prove illusory . . . if courts were obligated to calculate sentencing ranges . . . without the benefit of" those retroactive amendments promulgated in response to the Fair Sentencing Act), should be accounted for in determining the applicable GSR in § 404(b) proceedings. Nor for that same reason need we address related questions concerning intervening factual developments, cf. United States v. Ticchiarelli, 171 F.3d 24, 35 (1st Cir. 1999) (providing that the scope of the appellate court's remand may determine the effect that may be given to such intervening factual developments); U.S.S.G. § 1B1.10(b)(1) (providing that, in § 3582(c)(2) proceedings, the "court shall substitute only the amendments listed in subsection (d) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected" (emphasis added)), or intervening case law, see United States v. Chambers, 956 F.3d 667, 672-74 (4th Cir. 2020), that might affect the GSR even under the old Guidelines.

agrees a district court may account for them in deciding by how much to reduce that sentence once it decides that some reduction is required.

### a.

The only possible source of the temporal limitation that the majority would impose on the "whether to reduce" determination in the text of § 404(b) itself would appear to be found in that provision's "as if" clause. But, as we have seen, that clause merely mandates that the statutory sentencing range -- and, by extension, the GSR -- that must be used in the § 404(b) proceeding is the one that obtained at the original sentencing proceeding as adjusted in accord with the mandated retroactive application of the Fair Sentencing Act. Thus, that clause does not, by terms, purport to speak to this precise temporal issue at all.[9]

Nor does § 404(b)'s "as if" clause impliedly speak to that issue in light of the way it interacts with the canon against superfluity. See In re Montreal, Me. & Atl. Ry., Ltd., 799 F.3d 1, 9 (1st Cir. 2015) ("[C]ourts should construe statutes to avoid rendering superfluous any words or phrases therein."). A

---

[9] Indeed, the fact that the only time frame referenced in the "as if" clause is the time of the commission of the offense indicates that Congress did not intend for the "as if" clause to dictate that a district court imagine itself to be inhabiting an earlier point in time in all respects. For, Congress could not have intended to direct a district court in a § 404(b) proceeding to imagine what sentence it would make sense to impose at a time when even the original sentencing proceeding had not yet occurred.

construction of § 404(b) that would confer on district courts the discretion to consider intervening developments in deciding whether to reduce a sentence would not render the "as if" clause meaningless, even though it would permit a district court to give weight to a favorable intervening change in the Guidelines. Such a construction still treats that clause as usefully performing the role of identifying the sentencing range to be used in the § 404(b) proceeding by specifying that it is the range that would apply if the Fair Sentencing Act had been in effect at the time of the commission of the underlying offense.

The majority does suggest that a separate textual limitation on discretion -- not to be found within § 404 itself -- compels the resolution of the temporal issue that it embraces. The majority locates that limitation in 18 U.S.C. § 3582(c)(1)(B)'s grant of authority to "modify an imposed term of imprisonment to the extent . . . expressly permitted by statute." Id. (emphasis added).

To the majority, this "expressly permitted" language functions as a global clear-statement rule for sentencing modification measures generally. Thus, the majority concludes, this language requires us to read the express grant of authority in § 404(b) as narrowly as possible when it comes to the "whether to reduce" determination.

But, such a reading of the "expressly permitted" language misconstrues the operation of § 3582(c)(1)(B), which is merely a finality exception that does not itself impose substantive limits. Cf. United States v. Triestman, 178 F.3d 624, 629 (2d Cir. 1999) (Sotomayor, J.) (reading § 3582(c)(1)(B) not to impose its own limitations but merely to "note[] the authority to modify a sentence if modification is permitted by statute" (emphases omitted) (quoting S. Rep. No. 98-225 (1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3304)). Thus, insofar as the revisiting proceeding at issue here is properly deemed a "modification" proceeding, it is enough to satisfy that textual requirement in § 3582(C)(1)(B) in my view that § 404(b) "expressly permit[s]" modification. And, that being so, we must look to § 404(b) itself -- and not elsewhere -- for any limits on the extent of the modification that is allowed, precisely because that provision does expressly permit a modification to be made. See United States v. Kelley, 962 F.3d 470, 477 (9th Cir. 2020) ("[T]he First Step Act expressly permits a specific type of sentence reduction, and we interpret and implement such an independent congressional statute on its own terms.").

**b.**

What, then, are the limits that § 404(b) imposes when it comes to the precise temporal question before us at this juncture of the analysis, which concerns a district court's discretion as

to whether to reduce a sentence once the Fair Sentencing Act has been given its requisite retroactive effect?  Once again, because the text of § 404(b) provides no clear answer, I find it most helpful to consider the backdrop against which Congress enacted the provision.  See Martin, 974 F.3d at 139-40.

I do not mean to suggest that we may simply pick and choose from the rules that govern previously established federal sentencing frameworks in construing § 404(b) in this connection. We have no warrant to select those aspects of them that we like and to discard those that we do not in determining the rules that are to be operative under § 404(b).

I do mean to suggest, however, that, insofar as the face of § 404(b) is not clear one way or the other as to how it is to be construed on a crucial interpretive point, then we should apply the familiar tools of statutory interpretation to resolve that ambiguity.  And, as those familiar tools include considerations of the background understandings against which Congress legislated, there is good reason to give interpretive weight to those understandings in resolving the ambiguity at hand.

Indeed, the evident remedial purposes of the First Step Act, see United States v. White, 984 F.3d 76, 89-90 (D.C. Cir. 2020) (detailing the remedial purpose of the First Step Act and arguing that it should be understood in light of that purpose), accord with following such an interpretive course.  They suggest,

if anything, a reason to presume that Congress would have wanted to confer no less discretion in this context than it has conferred in seemingly similar ones, especially given the discretionary manner in which the federal sentencing framework as a whole operates. Cf. Pepper, 562 U.S. at 488-91 (discussing the "longstanding principle" granting sentencing courts "broad discretion to consider various kinds of information" (quoting United States v. Watts, 519 U.S. 148, 151 (1997))).

For that reason, I find it instructive in construing Congress's intent that it was well understood prior to § 404(b)'s passage that, on remand of a sentence, the district court, once it has identified the applicable GSR for that revisiting proceeding based on the Guidelines that were in place at the time of the original sentencing, is still free to consider post-sentencing developments in selecting the new sentence in light of that anchoring GSR. See Pepper v. United States, 562 U.S. 476, 490 (2011) ("In light of the federal sentencing framework . . . , we think it clear that when a defendant's sentence has been set aside on appeal and his case remanded for resentencing, a district court may consider evidence of a defendant's rehabilitation since his prior sentencing . . . ."). And I find it instructive as well that the same was understood to be true in the context of modification proceedings under 18 U.S.C. § 3582(c)(2), once the GSR has been set using the old Guidelines. See U.S.S.G.

§ 1B1.10(b); id. § 1B1.10 cmt. n.1(B). As the Commission has recognized, moreover, that is true not only with respect to the "by how much" question but also with respect to the threshold "whether" question. See id. § 1B1.10 cmt. n.1(B)(iii) ("The court may consider post-sentencing conduct of the defendant that occurred after imposition of the term of imprisonment in determining: (I) whether a reduction in the defendant's term of imprisonment is warranted; and (II) the extent of such reduction . . . ."); see also Chavez-Meza v. United States, 138 S. Ct. 1959, 1967 (2018) (assuming that post-sentencing developments were properly before the district court).

I thus see little reason to conclude that Congress must have silently intended not to permit a district court to exercise a similar amount of discretion pursuant to § 404(b) to consider things as they are at present. Rather, I would read that cryptic text to have been intended to permit a district court, in identifying any new sentence, to account for new developments in the same manner just described, given that they may be accounted for on a remand or in a run-of-the-mill modification proceeding.

Of course, it would not make sense to conclude that Congress intended in enacting § 404(b) to give its beneficiaries extra-special treatment relative to their fellow intended beneficiaries of the Fair Sentencing Act. That is in part why I agree with the majority that a district court in a § 404(b)

proceeding must derive the GSR from the Guidelines in effect at the original sentencing.

But, as I have explained, the purpose and history of the First Step Act demonstrate that Congress wanted § 404(b)-eligible defendants to have an opportunity for relief at least roughly equivalent to that afforded to those § 3582(c)(2)-eligible defendants who already had an opportunity to have their sentences revisited in light of the changes effected by the Fair Sentencing Act. It thus, in my view, counts rather strongly against the majority's approach to the temporal constraints that district courts must labor under in conducting § 404(b) proceedings that those defendants who seek reductions under that provision would be worse off under it in this respect than those who seek them under 18 U.S.C. § 3582(c)(2). After all, it is clear that district courts revisiting sentences in § 3582(c)(2) modification proceedings are permitted to give favorable post-sentencing developments weight in deciding not just the extent of the reduction of a sentence but also whether to reduce a sentence at all, even if those developments may not be considered in calculating the applicable GSR for the modification proceedings themselves. See U.S.S.G. § 1B1.10 cmt. n.1(B)(iii).

I do recognize that it is merely Sentencing Commission commentary that most clearly confirms as much in the § 3582(c)(2) modification context. See U.S.S.G. § 1B1.10(a)(1). But, that

commentary does reflect the Commission's evident understanding of the text of 18 U.S.C. § 3582(c)(2), which authorizes a district court to "reduce" a prior sentence based on a retroactive legal change.

Thus, that commentary suggests to me that the Commission understood that statutory text to be susceptible of a construction that would read it simultaneously to instruct district courts to calculate the GSR to be used in the modification proceeding based on the Guidelines in effect at the time of the original sentencing (as adjusted by retroactive application of the Fair Sentencing Act) and to take account of post-sentencing developments in deciding whether to reduce that sentence in light of that GSR. See U.S.S.G. § 1B1.10(b)(1); U.S.S.G. § 1B1.10 cmt. n.(1)(B)(iii). That is significant, in my view, because § 404(b) similarly authorizes district courts to "impose a reduced sentence" based on the retroactive legal change brought about by § 404(b). Why not, then, conclude that Congress similarly contemplated in this context that a district court could operate in this same variable temporal manner, such that it could rely on present-day knowledge in deciding whether a reduction is warranted under § 404(b), even though it must draw on the old Guidelines to calculate the GSR that anchors that decision? See Martin, 974 F.3d at 139 ("[I]t is helpful to look at the parallels between section 3582(c)(2) and

the First Step Act to resolve background questions regarding the mechanics of the First Step Act.").[10]

Of course, if our aim is to construe § 404(b)'s text to accord with the way § 3582(c)(2) had been understood in the relevant respect, then I acknowledge that it is important to account for the fact that § 3582(c)(2) expressly refers to the 18 U.S.C. § 3553(a) factors while § 404(b) does not. But, I am not persuaded that this difference between these two texts shows that Congress intended to give district courts less discretion -- temporally -- to remedy a past injustice based on a retroactive change in the law under the First Step Act than they have to remedy such an injustice in an ordinary modification proceeding.

Implicit in the idea of deciding whether to impose a reduced sentence is some consideration of the § 3553(a) factors -- and that is no less true under § 404(b) than it is under § 3582(c)(2). The majority itself acknowledges as much in its recognition that the "original calibration of the section 3553(a) factors" still properly informs the district court's decision whether to reduce a sentence. Maj. Op. at 21. Thus, the inclusion

---

[10] It is important to emphasize that each ambiguity in § 404(b) must be taken on its own terms. There is a difference between construing an ambiguity using background context and ordinary interpretive tools and importing an arbitrary limitation into § 404. For example, I cannot see any reason to import the limitation on the extent of a sentence reduction in § 3582(c)(2) proceedings, see U.S.S.G. § 1B1.10(b)(2), into the § 404(b) context.

of a reference to § 3553(a) in § 3582(c)(2) but not in § 404(b) cannot in and of itself be understood to suggest that no consideration of the § 3553(a) factors at all may be given in a § 404(b) proceeding.

That, then, leaves only the possibility that the inclusion of the reference to § 3553(a) in § 3582(c)(2) but not in § 404(b) supplies the basis for concluding that intervening considerations may be given weight in the former type of proceedings but not the latter. But, that, too, does not follow.

Section 3582(c)(2)'s mandate to consider the § 3553(a) factors does not itself purport to specify whether district courts are to use the "new" or the "old" § 3553(a) factors in doing so. Thus, it cannot be that the inclusion of the bare reference to § 3553(a) in § 3582(c)(2) and its absence from § 404(b) compels drawing such a temporal distinction those two types of proceedings when it comes to the § 3553(a) analysis that is necessarily relevant to each.

Put otherwise, even after comparing the text of § 3582(c)(2) and § 404(b), we necessarily come back to the same basic temporal question that § 404(b) does not by its terms purport to resolve: Must the § 3553(a) analysis be informed only by things as they were, or can it also be informed by things as they are? And, as I have explained, precisely because the text of the First Step Act does not clearly answer that question one way or the

other, I see no reason to construe it in a way that would render it out of step with the way revisiting proceedings otherwise proceed.

Indeed, the majority itself finds a new § 3553(a) analysis permissible to some extent -- in deciding the extent of a reduction if one is in order -- and yet it provides no textual explanation for drawing this line where it does. Nor has any other court, to my knowledge, found such a textual basis.

A construction that would extend that same temporal discretion to the "whether to reduce" determination also makes good practical sense. Like run-of-the-mill modification proceedings, § 404(b) proceedings are in many cases occurring well after a defendant's original sentencing proceeding. That makes it a potentially difficult and senseless task to determine the "original calibration" of the § 3553(a) factors. See United States v. Rose, 379 F. Supp. 3d 223, 235 (S.D.N.Y. 2019) ("[G]iven the length of the sentences at issue in crack-cocaine cases, there is a high degree of likelihood that many of the judges considering the First Step Act motion will not be the original sentencing judge."); see also, e.g., United States v. King, 423 F. Supp. 3d 481, 489 (M.D. Tenn. 2019) (finding that because the defendant seeking a reduction pursuant to § 404(b) was "sentenced more than a decade and a half ago by a judge who has since retired" and because the sentencing transcript demonstrated that the

defendant's "sentence was very much tied to the statutory mandatory minimum," thus "beg[ging] the question of whether the sentence would have been less if the statutory floor were only ten instead of twenty years[,] . . . it falls on this Court to make that determination and the only effective way to do so is by considering the [§] 3553(a) factors," the use of which "also necessitates that the Court consider [post-sentencing] rehabilitation").

The reason to be wary of concluding that Congress must have intended to impose such a bar as the majority embraces would seem to be especially strong, moreover, when the Supreme Court has recognized that such intervening facts as a defendant's admirable post-sentencing conduct can be "highly relevant to several of the § 3553(a) factors." See Pepper, 562 U.S. at 491. And, as I have noted, the Guidelines commentary expressly permits consideration of post-sentencing conduct in § 3582(c)(2) sentence modification proceedings. See U.S.S.G. § 1B1.10 cmt. n.1(B)(iii).

**c.**

For all of these reasons, then, it is a mistake in my view to read § 404's silence with respect to the temporal questions that arise once the GSR is in place (based as it must be on the old Guidelines) in the constraining manner that the majority does with respect to the "whether to reduce" determination. Such a reading requires us to conclude that, with respect to the consideration of intervening developments in deciding whether a

sentence reduction is in order, Congress meant for people who were relying on the Commission's response to a disparity to be better off than people relying on Congress's own response to that disparity.

**3.**

There remains, then, just one loose interpretive end with regard to the framework that § 404(b) generally establishes. It concerns the distinction that some courts have drawn between intervening factual developments (such as the defendant's post-sentencing conduct or the vacatur of his prior convictions) and intervening legal ones (such as the advent of Guidelines amendments that would be favorable to the defendant, even if they have not been made retroactive). See, e.g., United States v. Robinson, 980 F.3d 454, 463 (5th Cir. 2020) (explaining that the Fifth Circuit has precluded district courts from "consider[ing] other post-sentencing changes in the law" aside from those mandated by the Fair Sentencing Act, but noting that the Fifth Circuit has "not h[eld] that [district] court[s] cannot consider post-sentencing conduct" (quoting United States v. Jackson, 945 F.3d 315, 321, 322 n.7 (5th Cir. 2019))); Kelley, 962 F.3d at 474 & n.4, 475 (holding that the First Step Act "does not authorize the district court to consider other legal changes that may have occurred after the defendant committed the offense" but not addressing whether it was

permissible that the district court considered that the defendant "had been a model inmate during her incarceration").

The courts that have concluded that § 404(b) draws this line appear to have relied on the expressio unius canon to tease out the First Step Act's meaning, treating the "as if" clause's singling out of that one legal change as a sign that Congress impliedly intended to preclude the consideration of any other legal change. See United States v. Hegwood, 934 F.3d 414, 418-19 (5th Cir. 2019); Kelley, 962 F.3d at 475.[11] The government argues that we should do the same. But, I do not agree.

Although the "as if" clause refers only to the Fair Sentencing Act, it does not do so, as I have explained, in a way that necessarily gives rise to a preclusive inference with respect to the propriety of giving mere consideration in selecting a sentence to intervening legal developments other than the one brought about by the clause itself. Nor am I alone in so concluding. See United States v. Hudson, 967 F.3d 605, 612 (7th Cir. 2020) ("The First Step Act does not prevent the court from considering [the change to the defendant's career offender status] when deciding whether the sentence imposed is 'sufficient, but not

---

[11] Because these courts were considering requests for a new Guidelines calculation accounting for legal changes, which I agree is impermissible, it is not clear that they would preclude consideration of legal changes against a GSR that does not itself reflect those changes.

greater than necessary,' under 18 U.S.C. § 3553(a). . . . '[T]oday's Guidelines may reflect updated views about the seriousness of a defendant's offense or criminal history.'" (quoting United States v. Shaw, 957 F.3d 734, 742 (7th Cir. 2020))); United States v. Harris, 960 F.3d 1103, 1106 (8th Cir. 2020) ("[T]he § 3553(a) factors in First Step Act sentencing may include consideration of the defendant's advisory range under the current guidelines.").

I thus find myself in a by-now-familiar position: I face the question under § 404(b) about how much discretion a district court has to account for present realities that the text of that provision does not answer with any clarity. And so, for me, the right way through is to follow the now-familiar approach of resolving that ambiguity in a manner that most aligns § 404(b) with other revisiting proceedings.

Following that course, I find it significant that this Court has repeatedly recognized that legal changes, even when not used to set the GSR that serves as the benchmark, can inform the district court's exercise of its discretion to select a reasonable sentence in light of that benchmark. See, e.g., United States v. Frates, 896 F.3d 93, 102 (1st Cir. 2018) (recognizing the distinction between recalculating the GSR on remand to account for intervening nonretroactive amendments, which would "circumvent the Sentencing Commission's non-retroactivity determination," and

- 68 -

considering intervening legal changes that reflect "the Commission's revised policy position" in exercising the "discretion to select an appropriate sentence"); United States v. Godin, 522 F.3d 133, 136 (1st Cir. 2008) (per curiam) (noting that the Sentencing Commission's "current thinking" about, for example, who may be deemed a career offender, may properly "influence . . . the judge's ultimate discretionary choice of sentence"); United States v. Rodriguez, 630 F.3d 39, 42 (1st Cir. 2010) (finding that courts that must "start with old Guidelines" can still "consult new ones in choosing suitable sentences," as "Guidelines revisions [can] help [courts] select reasonable sentences that (among other things) capture the seriousness of the crimes and impose the right level of deterrence"). And, I note, we have come to that conclusion despite the express directions that Congress has given about which legal changes could be relied upon to calculate the applicable GSR. See, e.g., 18 U.S.C. § 3742(g)(1); see also U.S.S.G. § 1B1.11(b)(1).

To be sure, this body of precedent concerns the proper approach for a district court to take on the remand of a sentence from a direct appeal and that is a type of revisiting proceeding in which the prior sentence is -- strictly speaking -- no longer in place. Here, by contrast, there is a presumptively valid sentence from which a reduction is being sought. For that reason, I suppose, it is possible to understand sentence selection in this

- 69 -

context to entail not simply a choice of length but also a distinct initial question as to whether the original sentence remains appropriate -- in other words, to entail both a "whether to reduce" inquiry and a "by how much to reduce," insofar as a reduction is warranted at all, inquiry.

But, even if one accepts that it is not artificial to divvy up the task of sentence selection under § 404(b) in that two-step manner, that very same type of task is required in a § 3582(c)(2) modification proceeding. There, too, a reduction from a sentence that is presently in place is being sought based on an expressly identified retroactive legal change. I know of no precedent, however, that holds that a subsequent, nonretroactive Guidelines change favorable to the defendant may not even be considered -- once the GSR has been calculated for use at the modification proceeding independent of such a change -- in deciding whether to modify the sentence in such proceedings. And I certainly know of none suggesting that while such a legal change may not be considered for that purpose it may be considered in determining the extent of the modification.[12]

---

[12] I am aware that in <u>Dillon</u>, 560 U.S. at 831, the Supreme Court rejected the defendant's contention that the district court should have considered intervening <u>legal</u> changes. The Court concluded that because "the aspects of his sentence that Dillon seeks to correct were not affected by the Commission's amendment to § 2D1.1, they are outside the scope of the proceeding authorized by § 3582(c)(2), and the District Court properly declined to address them." 560 U.S. at 831. But, Dillon requested a

Thus, here, too, in the face of the relevant ambiguity occasioned by § 404(b)'s brief text, I think it sensible to proceed on the understanding that Congress intended for the conduct of revisiting proceedings under that provision to be similar to the conduct of them more generally. And, in this limited respect, I note that I am actually in interpretive agreement with the majority, which similarly sees nothing in § 404(b) that would permit factual and legal considerations to be treated differently as a temporal matter. See also Jackson, 945 F.3d at 321

_____

recalculation of the sentence to correct a Booker error and adjust the criminal-history category. See id.; see also United States v. Jordan, 162 F.3d 1, 3-5 (1st Cir. 1998) (concluding that § 3582(c)(2) did not permit defendant to obtain benefit of U.S.S.G. § 5K2.0 departure not applied at original sentencing). As I have explained, this Court has recognized the difference between accounting for intervening legal and factual developments to recalculate the Guidelines range and considering them "as a discretionary factor." Frates, 896 F.3d at 102-03.

I am also aware that a district court under § 3582(c)(2) generally cannot reduce the sentence below the GSR that obtains after having been adjusted to account for retroactive amendments. See Dillon, 560 U.S. at 822 ("Except in limited circumstances, . . . [U.S.S.G.] § 1B1.10(b)(2)(A) forecloses a court acting under § 3582(c)(2) from reducing a sentence 'to a term that is less than the minimum of the amended guideline range.'"). But, Guidelines changes that are not retroactive could in that context still impact where to set the sentence in relation to that range (especially if the original sentence was set at its higher end), and, in any event, nothing in § 404 suggests that the limitation on the extent of a reduction that is allowable in § 3582(c)(2) modification proceedings applies to § 404(b) proceedings. See U.S.S.G. § 1B1.10(a)(1) (referring only to § 3582(c)(2) sentence reductions). Compare First Step Act § 404, with 18 U.S.C. § 3582(c)(2) (providing that such a reduction must be "consistent with applicable policy statements by the Sentencing Commission").

(recognizing that disparate treatment of post-sentencing legal and factual developments "make[s] little sense").

## C.

To sum up, then, I do not agree with the majority's bifurcated treatment of the temporal issue that § 404(b) requires us to resolve. In my view, when confronted with an eligible defendant's § 404(b) motion, the district court must proceed as follows.

The district court first must determine the statutory sentencing range and the GSR to be used in assessing whether to reduce the defendant's sentence as requested. In making those determinations, moreover, the district court must rely on the relevant provisions of the Fair Sentencing Act as if they had been in effect when the offense was committed, while using the Guidelines that were operative at the time of the original sentencing proceeding (save for the potential caveats I have noted) and not those presently in effect.

But, although these conclusions align me with the majority's approach under § 404(b) to this point, the logic that leads me to them requires me to break with its view of how a district court conducting a § 404(b) proceeding should act thereafter. For, in my view, given the purposes and background against which Congress legislated in passing the First Step Act, the district court, having set the range in the manner just

described, is as free to consider intervening developments (both factual and legal) in making the gating decision under § 404(b) as to whether to impose a reduced sentence (based on a GSR in whose determination such developments played no role) as it is under the majority's approach to consider those developments in making the follow-on assessment of how much to reduce the original sentence.

## III.

With this framework in mind, I am now finally ready to take up the question of whether Concepcion is right to contend that, in this particular case, the District Court abused its discretion in declining to reduce his sentence. I conclude that he is -- in part.

I am not persuaded by Concepcion's contention that the District Court abused its discretion by refusing to use the Guidelines in place at the time of the § 404(b) proceeding to calculate the newly applicable GSR. For the reasons that I have already set forth at some length, I see no basis for construing § 404(b) to be such an outlier relative to other provisions structuring revisiting proceedings.

But, I also am not persuaded by Concepcion's contention, which I have not yet addressed, that the District Court abused its discretion when it failed to conduct a rebalancing of the § 3553(a) factors with respect to its assessment of whether subsequent factual developments -- such as those that Concepcion highlighted

pertaining to his admirable post-sentencing conduct.  For, even if I were to assume, as Concepcion contends, that such a rebalancing is obligatory (as opposed to merely permissible) under § 404(b), I still see no ground for finding error on this score in his case.

We have previously recognized that "simply because the district court didn't expressly mention" intervening developments in its ruling on a sentence reduction motion "doesn't mean it didn't consider" them.  United States v. Rodríguez-Rosado, 909 F.3d 472, 480 (1st Cir. 2018).  And, it is a familiar proposition that a sentencing court is not required to "verbalize its evaluation of each and every [§] 3553(a) factor," United States v. Reyes-Rivera, 812 F.3d 79, 89 (1st Cir. 2016), or to "afford each of the § 3553(a) factors equal prominence," United States v. Sosa-González, 900 F.3d 1, 5 (1st Cir. 2018).  Instead, the district court only must "set forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] legal decisionmaking authority." Rita v. United States, 551 U.S. 338, 356 (2007).

The fact that a district court does not consider a sentence on a blank slate under § 404(b) must be kept in mind as well in evaluating the district court's explanation of its decision in a proceeding held pursuant to that provision.  Cf. Chavez-Meza, 138 S. Ct. at 1967 (concluding that, when considering an appeal from a § 3582(c)(2) sentence modification, reviewing courts "need

not turn a blind eye" to the reasons the judge gave at the initial sentencing). For, because intervening factual developments might impact some elements of the § 3553(a) analysis while leaving others unaffected, a district court's failure to highlight intervening changes may only suggest "that the district court may have been unimpressed or unpersuaded by" them. Rodríguez-Rosado, 909 F.3d at 480.

Thus, even if Concepcion is right that a present-day rebalancing of the § 3553(a) factors is required under § 404(b), I conclude that the explanation that the District Court provided here was sufficient to assure us that it had a "reasoned basis for exercising [its] legal decisionmaking authority," Chavez-Meza, 138 S. Ct. at 1966 (quoting Rita, 551 U.S. at 356), with respect to its decision not to reduce the sentence based on the intervening factual developments that Concepcion identified, see id. (assuming that the "reasoned basis" standard applied in the § 3582(c)(2) context and finding it satisfied where the judge -- who had also imposed the defendant's original sentence -- did not address the parties' arguments about the defendant's post-sentencing conduct while in prison). Accordingly, there was no abuse of discretion here in this regard.

I do note, though, that my reason for so concluding is not the same as the majority's. Under its view, intervening factual considerations may not be considered in making the "whether

to reduce" determination.  Under mine, by contrast, those considerations may be considered.  In fact, it is only because -- as far as I can tell -- Concepcion's claim of error on this score has no merit in his particular case that I reject it.

That brings us, then, to Concepcion's final contention, which is that the District Court abused its discretion in declining to reduce his sentence because it failed to recognize that it could consider intervening legal changes -- specifically, the Commission's intervening changes to the career offender Guideline -- in his § 404(b) proceeding.  Here, I am persuaded by Concepcion's challenge.

The District Court appears to have declined to consider that intervening change because it was of the view that it was barred -- as a matter of law -- from considering such intervening legal developments in exercising its discretion in any respect under § 404(b) of the First Step Act.  See United States v. Concepcion, No. 07-10197, 2019 WL 4804780, at *3-5 (D. Mass. Oct. 1, 2019).[13]  This aspect of the District Court's analysis, of

_____

[13] In assessing whether the First Step Act permits "consider[ation] [of] any intervening changes in the law other than those made by the Fair Sentencing Act," the District Court relied on the Fifth Circuit's analysis in Hegwood and concluded that, because "Amendment 798 derives from an entirely different source" than the Fair Sentencing Act, it is "not clear that Amendment 798's changes are a permissible ground for resentencing under the First Step Act."  Concepcion, 2019 WL 4808780, at *3-4 (citing Hegwood, 934 F.3d at 418).  The District Court's analysis of its possible power to take account of this Guidelines change is

course, causes no concern for the majority.  In its view, the District Court correctly ascertained this legal bar to its exercise of discretion, given that such considerations could only come into play at what the majority describes as the second step of the inquiry -- which concerns only the extent of the reduction and not whether one is needed at all, and which the majority views the District Court as never having reached.

But, for the reasons I have explained, I read § 404(b) to permit a district court to consider post-sentencing developments once it has determined the proper GSR, based on the Fair Sentencing Act's retroactive application.  I thus understand the District Court here to have misapprehended the scope of its discretion -- as a matter of law -- to consider the fact that Concepcion may no longer qualify as a career offender under current Guidelines in making its gating determination about whether to reduce the sentence at all.[14]

---

best read to reflect its legal view that the First Step Act barred it from considering that new legal development and then its separate assessment -- outside of the Act -- of whether 18 U.S.C. § 3582(c)(2), see id. at *4, or the Godin/Ahrendt doctrine, see id. at *5 & n.1, nonetheless permitted it to consider the development.

[14] Although the majority notes that the District Court "consider[ed] the amended career offender guideline, noted that the Sentencing Commission had declined to make it retroactive, and decided not to pantomime it as a matter of discretion," Maj. Op. at 28-29, the District Court's consideration of Amendment 798 was, crucially, undertaken only outside the rubric of the First Step Act.  As discussed supra note 10, the District Court's opinion

Such a misapprehension about the extent of the discretion that a statute confers is -- as I noted at the outset of this journey -- a classic abuse of discretion. See United States v. Snyder, 136 F.3d 65, 67 (1st Cir. 1998) ("[A] district court by definition abuses its discretion when it makes an error of law." (quoting Koon v. United States, 518 U.S. 81, 100 (1996))). Thus, while the majority affirms the District Court's decision to deny Concepcion's motion for a sentence reduction pursuant to § 404(b), I would vacate and remand the District Court's decision denying Concepcion § 404(b) relief, so that the District Court may consider whether to reduce the sentence on the proper understanding that it may consider the impact of the change to the career offender Guideline.

I understand that the District Court on remand might well reach the same result -- perhaps based on its reasoning about the complexity of any recalculation of the GSR that it invoked in discussing Godin/Ahrendt, Concepcion, 2019 WL 4804780, at *5 & n.1. But, I am hesitant to make that assumption when the District Court was misinformed about what § 404(b) itself permitted it to do. Cf. United States v. Taylor, 848 F.3d 476, 500 (1st Cir. 2017) (remanding even upon "recogniz[ing] that [the] sentence on remand

---

makes clear that it understood the First Step Act not to permit it to consider Amendment 798 as a ground for resentencing under that Act.

may be unchanged," because "the great latitude possessed by the district court . . . makes it all the more important that the district judge exercise a fully informed discretion" (quoting United States v. Hernandez Coplin, 24 F.3d 312, 320 (1st Cir. 1994))).[15]

## IV.

Given the deferential standard of review that we must apply, in many -- maybe most -- instances concerning § 404(b), the legal difference between my approach and the majority's will not matter, practically speaking.  In that respect, I agree that there is not that much "daylight" between my approach and the majority's.

Nonetheless, Concepcion's case does illustrate how this legal difference might very well matter in some instances.  Cf. Godin, 522 F.3d at 136; Frates, 896 F.3d at 103-04.  And, in cases involving intervening factual developments, I would think the legal difference might be especially significant.

---

[15] Because I find the District Court's error here to inhere in its misunderstanding about its discretion to consider intervening legal developments, this case does not pose the distinct question whether it would be permissible for a district court to refuse categorically to consider intervening developments, while understanding that it had the legal authority to do so.  I do note, though, that this Court's decision in Rodríguez-Rosado, 909 F.3d at 481, though also not addressing a categorical refusal, did hold that district courts are not required to consider post-sentencing rehabilitation in § 3582(c)(2) sentence modification proceedings, even while recognizing that such evidence can be relevant to the § 3553(a) analysis.

Thus, while I do not agree with the majority's disposition in this case, I also wish to emphasize my broader concern about construing the First Step Act in a manner that diminishes its remedial impact. This measure represents a rare instance in which Congress has recognized the need to temper the harshness of a federal sentencing framework that is increasingly understood to be much in need of tempering. Indeed, the First Step Act's very title signals Congress's interest in having more rather than less done in that regard going forward. Accordingly, given that the text of § 404(b) is less than clear in the relevant respect, I see no reason to construe it in a way that would attribute to Congress an intent to constrain district courts from exercising the remedial discretion that they are accustomed to exercising when revisiting a sentence that may have been too harsh when first imposed. I thus respectfully dissent.